EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rafael Rosario & Associates, Inc.<br>    Recurrido<br><br>                    v.<br><br>Departamento de la Familia<br>    Peticionario | Certiorari<br><br>2002 TSPR 84<br><br>157 DPR _____ |

Número del Caso: CC-2001-927


Fecha: 21/junio/2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional I


Juez Ponente:
                    Hon. Antonio J. Negroni Cintrón



Oficina del Procurador General:
                    Lcda. Lizette Mejías Avilés
                    Procuradora General Auxiliar


Abogado de la Parte Recurrida:
                    Lcdo. Carlos Bobonis González



Materia: Revisión Administrativa



        Este documento constituye un documento oficial del Tribunal Supremo
        que está sujeto a los cambios y correcciones del proceso de
        compilación y publicación oficial de las decisiones del Tribunal.
        Su distribución electrónica se hace como un servicio público a la
        comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Rafael Rosario & Associates,
Inc.

     Recurrido

       v.

                             CC-2001-927    Certiorari

Departamento de la Familia

     Peticionario


Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.


San Juan, Puerto Rico, a 21 de junio de 2002.

Mediante el presente recurso el Procurador General, en representación del Departamento de la Familia de Puerto Rico, solicita de esta Curia que revoquemos una resolución emitida por el Tribunal de Circuito de Apelaciones declarando no ha lugar su solicitud de desestimación del recurso de revisión presentado por falta de jurisdicción, toda vez que no se le notificó de su presentación a la **agencia recurrida**, la Junta Adjudicativa del Departamento de la Familia.

Nos corresponde resolver si la Junta Adjudicativa constituye una agencia separada del Departamento de la Familia, a tenor con la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la

Ley de Procedimiento Administrativo Uniforme, en adelante L.P.A.U.,[1] y, como consecuencia, si se le tiene que notificar separadamente de la presentación de un recurso ante el Tribunal de Circuito de Apelaciones para revisar una resolución final emitida por ésta.

I

El 6 de junio de 2001, el Departamento de la Familia emitió una invitación a subasta formal para el proyecto denominado "Disk Subsystems Acquisition", que conllevaba la adquisición del equipo necesario para aumentar la capacidad de almacenamiento de información de los sistemas de computadoras de esa agencia.

La apertura de la subasta se efectuó el 8 de junio de 2001, con la comparecencia de la parte aquí recurrida, Rafael Rosario & Associates, Inc., en adelante R.R.A., y otros tres licitadores, entre ellos IBM Corporation, en adelante IBM. Surge del expediente, y es un hecho no controvertido, que R.R.A. fue el postor más bajo para dicha subasta.[2]

El **2 de julio de 2001**, la Junta de Subastas del Departamento de la Familia notificó el Aviso de Adjudicación de Subasta, indicando que la buena pro se le había adjudicado a IBM, como el postor más bajo **que cumplió con las especificaciones, términos y condiciones requeridas**. Expresó, que aunque la cotización de R.R.A. era la más baja, su equipo no cumplía con los requerimientos técnicos solicitados en la referida subasta. **Finalmente, surge de dicho aviso de adjudicación que cualquier solicitud de reconsideración debía presentarse ante la Junta Adjudicativa del Departamento de la Familia dentro de los siguientes**

---

[1] 3 L.P.R.A. sec. 2101 et. seq.

[2] Apéndice de la Petición de Certiorari, págs. 44-140.

**diez (10) días, a partir de la fecha de notificación de la adjudicación de la subasta.**

Inconforme con tal determinación, **R.R.A. presentó ante la Junta Adjudicativa del Departamento de la Familia una solicitud de reconsideración el 12 de julio de 2001.** En dicha solicitud, arguyó que el equipo propuesto cumplía con todos los requisitos técnicos de la subasta. **La Junta Adjudicativa denegó la referida solicitud de reconsideración y apoyó su dictamen en el fundamento de que dicha solicitud había sido radicada fuera de término.**

Por no estar de acuerdo con dicha resolución, R.R.A. acudió ante el Tribunal de Circuito de Apelaciones, mediante recurso de revisión, aduciendo que la referida solicitud de reconsideración fue presentada oportunamente. Dicho recurso fue notificado, entre otros, a la Junta de Subastas del Departamento de la Familia, **más no así a su Junta Adjudicativa**, que era el organismo adjudicativo de esa dependencia gubernamental que había emitido la resolución recurrida.

Mediante resolución emitida el 20 de agosto de 2001, el Tribunal de Circuito de Apelaciones le concedió un término de diez (10) días a las partes recurridas para que sometieran sus respectivos alegatos sobre los méritos del recurso. El Departamento de la Familia compareció y se allanó al señalamiento de error de R.R.A., admitiendo que la mencionada solicitud de reconsideración se había presentado oportunamente. No obstante, adujo que el referido foro intermedio apelativo carecía de jurisdicción para atender el recurso de revisión en cuestión, ya que la parte recurrente tenía que notificar, **por separado**, una copia de dicho escrito a la Junta de Subastas y otra a la Junta Adjudicativa, ambos organismos del Departamento de la Familia, y sólo le notificó con copia del mismo a la Junta de Subastas.

R.R.A. se opuso a la desestimación del referido recurso, alegando que tanto los miembros de la Junta de Subastas como los de la Junta Adjudicativa pertenecen a la misma agencia de gobierno, es decir, al Departamento de la Familia, y comparten la misma dirección postal, por lo que se había cumplido con el principio básico de notificación. Adujo, además, que fue precisamente la señora Madeline Molina, **Directora de la Junta de Subastas**, quien **vía facsímil** le remitió a R.R.A. la notificación de la resolución recurrida **emitida por la Junta Adjudicativa**.[3] El 25 de septiembre de 2001, el Departamento de la Familia replicó y arguyó, entre otros, que la Junta Adjudicativa **notificó formalmente la referida resolución a R.R.A. mediante correo,** conforme se desprende de la certificación de dicha resolución.[4]

El 16 de octubre de 2001, el Tribunal de Circuito de Apelaciones resolvió que el recurso de revisión ante su consideración, presentado por la parte aquí recurrida, se había notificado correctamente. Concluyó que, tanto la Junta Adjudicativa como la Junta de Subastas, son organismos del Departamento de la Familia **a tal punto que comparten la misma dirección postal.** Expresó que la referida Junta Adjudicativa **no es una agencia de gobierno separada** del Departamento de la Familia, a los efectos de la L.P.A.U., por lo que dicho organismo no tenía que ser notificado separadamente de la presentación del referido recurso de revisión. Concluyó, además, que "siendo el Departamento de la Familia el organismo constitucional que finalmente emitió la decisión y, a su vez, la parte recurrida, bastaba con la notificación que efectivamente se le hizo al Departamento para lograr el perfeccionamiento del recurso". Por lo que, no tenía que duplicarse la notificación.

---

[3] Íd., pág. 214.

Finalmente, el referido foro intermedio apelativo devolvió el caso a la Junta Adjudicativa del Departamento de la Familia para que atendiera y adjudicara en los méritos la aludida solicitud de reconsideración.

Inconforme con tal dictamen, el Procurador General recurre ante nos, mediante petición de <u>Certiorari</u>, señalando como único error cometido por el Tribunal de Circuito de Apelaciones el siguiente:

**ERRÓ EL TRIBUNAL DE CIRCUITO DE APELACIONES AL DETERMINAR QUE NO ERA UN REQUISITO JURISDICCIONAL LA NOTIFICACIÓN DEL RECURSO A LA JUNTA RECURRIDA POR PERTENECER A LA AGENCIA QUE ES PARTE DE LOS PROCEDIMIENTOS.**

El 25 de enero de 2002 emitimos una resolución concediéndole un término de veinte (20) días a la parte aquí recurrida, R.R.A., para que mostrara causa por la cual no debíamos expedir el auto solicitado y revocar la referida resolución emitida por el foro intermedio apelativo.

**El 19 de febrero de 2002, R.R.A. compareció mediante escrito en "Oposición a Certiorari".  En dicho escrito reiteró que la referida Junta Adjudicativa no es un organismo apelativo administrativo independiente, que derive sus facultades en virtud de una ley.  Arguyó que la referida Junta fue creada mediante reglamentación interna por el Secretario del Departamento de la Familia, en adelante Secretario, que a diferencia de otras agencias independientes, sus miembros** tienen que ser funcionarios o empleados del Departamento, **designados unilateralmente por el Secretario. Adujo, además, que los poderes de adjudicación de la referida Junta son** aquellos delegados **por el referido Secretario.  En virtud de lo cual, concluyó que dicha Junta es simplemente** una dependencia **del Departamento y no una entidad independiente y separada.**

---

[4] Íd., págs. 245-247.

II

El Artículo 17.30 del Reglamento para la Adquisición de Equipo, Materiales y Servicios No Profesionales del Departamento de la Familia[5] dispone lo siguiente:

17.30 Solicitud de Revisión de Adjudicación y Revisión Judicial

**La parte adversamente afectada por esta decisión podrá, dentro del término de diez (10) días a partir del archivo en autos de copia del aviso de adjudicación de la subasta, presentar una solicitud de revisión y/o impugnación ante la Junta de Adjudicaciones del Departamento. Si la Junta de Adjudicaciones dejase de tomar acción con relación a la solicitud de revisión y/o impugnación dentro de los diez (10) días de haberse presentado, se entenderá que ésta ha sido rechazada de plano, y a partir de esa fecha comenzará a correr el término para la revisión judicial.** Si se tomase alguna determinación sobre la solicitud, el término para solicitar la revisión judicial empezará a contarse desde la fecha en que se archiva en autos una copia de la notificación de la decisión de la Junta de Adjudicaciones. **Una parte adversamente afectada por una decisión del Departamento respecto a casos de impugnación de subastas, y que haya agotado todos los remedios provistos por el mismo, particularmente el foro apelativo de la Junta de Adjudicaciones, podrá presentar una solicitud de revisión ante el Tribunal Superior con competencia dentro de un término de diez (10) días contados a partir de la fecha del archivo en autos de copia de la notificación de la orden o resolución final de la agencia. La mera radicación de una solicitud de revisión sobre impugnación de subastas no tendrá el efecto de paralizar la adjudicación de la subasta impugnada.** (Énfasis nuestro.)

El Artículo IV del Reglamento de Adjudicación de Controversias del Departamento de la Familia,[6] que establece los procedimientos de la Junta Adjudicativa de la agencia dispone lo siguiente:

ARTICULO IV. – FUNCIONARIOS DE ADJUDICACION, JUECES ADJUDICATIVOS

---

[5] Art. 17.30, Reglamento Núm. 5450 del Departamento de la Familia de 19 de junio de 1996, (8 R.E.L.A. sec. 220.620 (2000).

[6] Art. IV, Reglamento Núm. 5431 del Departamento de la Familia de 22 de mayo de 1996, (8 R.E.L.A. sec. 220.2502 (2000).

A. Jueces Adjudicativos – Se establece una Junta de Adjudicaciones en el Departamento de la Familia de no menos de tres (3) miembros ni más de siete (7) miembros designados por el Secretario como Jueces Adjudicativos. **Estos serán funcionarios o empleados del Departamento, seleccionados de las distintas Administraciones, Divisiones u Oficinas que componen el mismo, a quienes se les delega la autoridad de adjudicar querellas o controversias según lo dispone este Reglamento. Los jueces adjudicativos serán nombrados por el término que determine el Secretario y se desempeñarán hasta que sus sucesores tomen posesión.**

La Junta se establece como un cuerpo colegiado. El Secretario nombrará un Director responsable de la administración de la Junta, quien será a su vez el Presidente de la Junta. Por lo menos dos (2) veces al mes o cuando fuere necesario, **el Presidente convocará a la Junta para resolver los casos, asuntos o controversias pendientes y cumplir con los términos establecidos en este reglamento, en la Ley Núm. 170 del 12 de agosto de 1988, según enmendada o en cualquier reglamento o ley que sea aplicable.**

Los Jueces Adjudicativos podrán, cuando las circunstancias del caso así lo requieran o cuando el Secretario así lo disponga, presidir vistas de adjudicación de acuerdo a lo dispuesto en este Reglamento. (Énfasis nuestro.)

El Artículo XIX de ese Reglamento[7] dispone, además, lo siguiente:

ARTICULO XIX. – PROCEDIMIENTO Y TERMINOS PARA SOLICITAR RECONSIDERACIÓN EN LA ADJUDICACIÓN DE SUBASTAS

**La parte adversamente afectada por una adjudicación de subastas podrá, dentro del término de diez (10) días a partir de la adjudicación de la subasta, presentar una moción de reconsideración ante la Junta de Adjudicaciones quien deberá considerarlo. Dentro de los diez (10) días de haberse presentado. [sic] Si se toma alguna determinación en su consideración, el término para solicitar la revisión judicial empezará a contarse desde la fecha en que se archivan en autos una copia de la notificación de la decisión de la Junta resolviendo la moción. Si la Junta dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los diez (10) días de haberse presentado, se entenderá que ésta ha sido rechazada de plano, y a partir de esa fecha comenzará a correr el término para la revisión judicial.**

**Los casos de impugnación de subastas se radicaran ante la Junta Adjudicativa. El procedimiento será el establecido en este Reglamento.**

**En los casos de impugnación de subastas, la parte adversamente afectada por una orden o resolución final de**

---

[7] Art. XIX, Reglamento Núm. 5431, <u>supra</u>, sec. 220.2517.

**la Junta, podrá presentar una solicitud de revisión ante el Tribunal con competencia dentro de un término de diez (10) días contados a partir del archivo en autos de la copia de la notificación de la orden o resolución final de la Junta. La mera radicación de una solicitud de revisión no tendrá el efecto de paralizar la adjudicación de la subasta impugnada.** (Énfasis nuestro.)

La Sección 3.19 de la L.P.A.U.[8] dispone lo siguiente:

**Los procedimientos de adjudicación de subastas serán procedimientos informales; su reglamentación y términos serán establecidos por las agencias. La parte adversamente afectada por una decisión podrá, dentro del término de diez (10) días a partir de la adjudicación de la subasta, presentar una moción de reconsideración ante la agencia o la entidad apelativa de subastas, de existir una en la agencia, según sea el caso.** La agencia, o la entidad apelativa deberá considerarla dentro de los diez (10) días de haberse presentado. Si se tomare alguna determinación en su consideración, el término para solicitar la revisión judicial empezará a contarse desde la fecha en que se archiva en autos una copia de la notificación de la decisión de la agencia o la entidad apelativa resolviendo la moción. Si la agencia o la entidad apelativa dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los diez (10) días de haberse presentado, se entenderá que ésta ha sido rechazada de plano, y a partir de esa fecha comenzará a correr el término para la revisión judicial. (Énfasis nuestro.)

La Sección 4.2 de la L.P.A.U.[9] establece, en lo pertinente, lo siguiente:

Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia **o por el organismo administrativo apelativo correspondiente** podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 2165 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. **La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión. La notificación podrá hacerse por correo.**

**En los casos de impugnación de subasta, la parte adversamente afectada por una orden o resolución final de la agencia, o de la entidad apelativa de subastas, según sea el caso, podrá presentar una**

---

[8] 3 L.P.R.A. sec. 2169.

[9] 3 L.P.R.A. sec. 2172.

**solicitud de revisión ante el Tribunal de Circuito de Apelaciones dentro de un término de diez (10) días contados a partir del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o la entidad apelativa, o dentro de los diez (10) días de haber transcurrido el plazo dispuesto por la sec. 2169 de este título.**  La mera presentación de una solicitud de revisión al amparo de esta sección no tendrá el efecto de paralizar la adjudicación de la subasta impugnada.

La competencia sobre el recurso de revisión será del Circuito Regional correspondiente al lugar donde se planee, se esté llevando o se haya llevado a cabo la actividad o incidente que hubiera dado lugar a la controversia. Si la actividad o incidente se está llevando o se llevará a cabo, o hubiere ocurrido en más de una región judicial, se podrá presentar el recurso de revisión en cualquiera de los Circuitos correspondientes a tales regiones.

Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente.  La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia.

**La revisión judicial aquí dispuesta será el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal emitida al amparo de este capítulo.**  (Énfasis nuestro.)

**Del texto de este estatuto trasluce la intención del legislador de plasmar indubitadamente el requisito de que los recursos para revisar una resolución final de una Junta de Subastas de una agencia administrativa se perfeccionen y notifiquen dentro del término de diez (10) días, siendo este un requisito jurisdiccional.  Permite la notificación con copia del recurso a las partes y a la** agencia recurrida **por correo, bastando su depósito en la oficina postal dentro del término jurisdiccional para que sea efectiva la misma.**[10]

**A su vez, la Regla 58(B) del Reglamento del Tribunal de Circuito de Apelaciones,**[11] **dispone, en lo pertinente, que:**

---

[10] Martínez v. Depto. del Trabajo, 145 D.P.R. 588 (1998).

[11] 4 L.P.R.A. Ap. XXII-A, R. 58 (Supl. 2001).

**(B) La parte recurrente notificará el escrito inicial de revisión a los(las) abogados(as) de récord del trámite administrativo o, en su defecto, a las partes,** así como a la agencia o al funcionario administrativo de cuyo dictamen se recurre, dentro del término para presentar el recurso. **(Énfasis nuestro.)**

...

Tanto de la Sección 4.2 de la L.P.A.U., supra, como de la regla antes citada, se desprende que la solicitud de revisión judicial de una decisión administrativa debe ser notificada **a la agencia recurrida y a todas las partes** dentro del término jurisdiccional dispuesto por ley para ello.  Reiteradamente hemos resuelto que el incumplimiento de la norma anterior priva de jurisdicción al Tribunal de Circuito de Apelaciones para entender en los méritos del recurso de revisión.[12]

El término agencia se define en la Sección 1.3 de la L.P.A.U.,[13] de la siguiente forma:

(a) *Agencia*.  Significa cualquier junta, cuerpo, tribunal examinador, corporación pública, comisión, oficina independiente, división, administración, negociado, departamento, autoridad, funcionario, persona, entidad o cualquier instrumentalidad del Estado Libre Asociado de Puerto Rico u organismo administrativo autorizado por ley a llevar a cabo funciones de reglamentar, investigar, **o que pueda emitir una decisión**, o con facultades para expedir licencias, certificados, permisos, concesiones, acreditaciones, privilegios, franquicias, acusar o adjudicar ... (Énfasis nuestro.)

En Olmeda Díaz v. Depto. de Justicia, supra, la entonces peticionaria, Odette Olmeda Díaz, fue separada de su puesto de Agente Especial II en el Negociado de Investigaciones Especiales por el

---

[12] Velázquez v. Adm. de Terrenos, res. el 7 de marzo de 2001, 2001 TSPR 31, 153 D.P.R. ___ (2001), 2001 J.T.S. 35; Lugo Rodríguez v. J.P., res. el 12 de enero de 2000, 2000 TSPR 3, 150 D.P.R. ___ (2000), 2000 J.T.S. 15; Diócesis Mayagüez I. Católica v. J.P., res. el 5 de febrero de 1999, 99 TSPR 11, 147 D.P.R. ___ (1999), 99 J.T.S. 9; Const. I. Meléndez, S.E. v. A.C., 146 D.P.R. 743 (1998); Ortiz v. A.R.Pe., 146 D.P.R. 720 (1998); Lab. Clínico Guaynabo v. Depto. de Salud, 146 D.P.R. 6 (1998); Martínez v. Depto. del Trabajo, 145 D.P.R. 588 (1998); Olmeda Díaz v. Depto. de Justicia, 143 D.P.R. 596 (1997).

Departamento de Justicia, luego de celebrada una vista informal.  La peticionaria apeló a la Junta de Apelaciones del Sistema de Administración de Personal, en adelante J.A.S.A.P., la cual, por su parte sostuvo la acción tomada por el Departamento de Justicia. Inconforme con dicho dictamen, la señora Olmeda Díaz presentó un recurso de revisión ante el Tribunal de Circuito de Apelaciones.  El Tribunal de Circuito de Apelaciones desestimó el recurso de revisión, toda vez que la peticionaria no notificó con copia del mismo a la J.A.S.A.P. Expresamos al resolver aquella controversia lo siguiente:

> De la citada Sec. 4.1 se desprende con claridad que lo que se revisará judicialmente es **la decisión de la agencia que finalmente adjudica la controversia entre las partes. En los casos de los organismos apelativos administrativos, la agencia a la cual se refiere el estatuto es la entidad apelativa que finalmente resuelve el caso y de cuya revisión se recurre al foro judicial.**
>
> Por ende, **la notificación de la presentación de la solicitud de revisión tiene que hacerse tanto a la agencia recurrida como a las partes en el foro administrativo. Cuando una de las partes en el foro apelativo administrativo <u>es otra agencia de gobierno</u> se le tiene que notificar la presentación de la solicitud de revisión en calidad de parte.**
> (Énfasis nuestro.)

Allí concluimos que el referido recurso tenía que notificarse a todas las partes, incluyendo a la agencia gubernamental, el Departamento de Justicia, que fungía como parte recurrida, así como al organismo administrativo "apelativo" que emitió la resolución final recurrida, **cuando éste último resulta ser otra agencia de gobierno distinta (J.A.S.A.P.).**

J.A.S.A.P. es una agencia independiente que deriva sus facultades por virtud del estatuto que la creó, según se desprende de la Sección 7.1 de la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, conocida como la Ley de Personal del Servicio Público.[14]  Dicho estatuto dispone

---

[13] 3 L.P.R.A. sec. 2102.
[14] 3 L.P.R.A. sec. 1381 <u>et seq.</u>

que dicha Junta funcionará enteramente independiente de la Oficina Central de Administración de Personal.  Los miembros de dicha Junta serán nombrados por el Gobernador, con el consejo y consentimiento del Senado de Puerto Rico.  El caso de autos presenta una situación algo distinta.

J.A.S.A.P. es una instrumentalidad gubernamental independiente con amplios poderes de adjudicación derivados expresamente de la sección 7.1 de la Ley de Personal del Servicio Público de Puerto Rico, supra.  **Su función consiste en dilucidar una controversia fáctica entre partes** que, de ordinario, se produce entre un empleado público y una agencia gubernamental. [15]  Su sección 7.13 [16] dispone, en lo pertinente, como sigue:

> La Junta tendrá, entre otras, las siguientes facultades:
>
> (1) A los fines de todas las audiencias e investigaciones que en opinión de la Junta sean necesarias y adecuadas para el ejercicio de las facultades que le confiere este capítulo, la Junta, o sus agentes, **tendrá durante un tiempo razonable acceso a cualquier evidencia de cualquier persona que esté siendo investigada o contra la cual se haya procedido y que se refiera a cualquier asunto que esté investigando la Junta o que esté en controversia. Cualquier miembro de la Junta tendrá la facultad para expedir citaciones, requiriendo la comparecencia y declaración de testigos.  Cualquier miembro de la Junta o agente designado para tales fines podrá tomar juramentos y afirmaciones, examinar testigos y recibir evidencia.**
>
> (2) **La Junta tendrá facultad para iniciar investigaciones** en cualquier caso que lo estime necesario **aunque no haya mediado petición formal al respecto de ninguna de las partes interesadas.**
>
> **(3) En caso de rebeldía o de negativa a obedecer una citación expedida contra alguna persona, cualquier sala del Tribunal de Primera Instancia dentro de cuya jurisdicción se encuentre, resida o tenga negocios la persona, tendrá jurisdicción para expedir contra dicha persona una orden requiriéndola a comparecer ante la Junta o uno de sus agentes para presentar evidencia o hacer una declaración.**

---

[15] Olmeda Díaz v. Depto. de Justicia, supra, pág. 601.

[16]  3 L.P.R.A. sec. 1393.

**Cualquier falta de obediencia a dicha orden podrá ser castigada como desacato.**

Ninguna persona será excusada **de comparecer y testificar, o de presentar libros, archivos, correspondencia, documentos u otra evidencia en obediencia a la citación expedida por la Junta** o un agente, basándose en **que el testimonio o evidencia que de ella se requiera pueda dar lugar a su procesamiento o a exponerla a un castigo o confiscación,** pero ningún individuo será procesado ni sujeto a ningún castigo o confiscación **por el contenido de lo testificado o de la evidencia presentada.** (Énfasis nuestro.)

...

**La sección 7.15[17] de dicho estatuto establece el procedimiento de "apelación" ante J.A.S.A.P. Dicha sección dispone que:**

**El procedimiento de apelación será el siguiente:**

**(1) La parte afectada según la sec. 1394 de este título, deberá presentar escrito de apelación a la Junta dentro de treinta (30) días a partir de la notificación de la acción o decisión objeto de la apelación.**

**(2)** La Junta podrá ordenar una investigación, **y como resultado de la misma podrá desestimar la apelación por considerarla frívola,** o podrá ordenar la celebración de una vista pública, con citación de las partes envueltas.

**(3) La Junta dispondrá por reglamento los procedimientos que gobernarán** la vista pública, sea ésta celebrada ante la Junta en pleno o ante un Oficial Investigador. **(Énfasis nuestro.)**

**Su sección 7.16[18] establece lo relativo a la revisión judicial de las decisiones de J.A.S.A.P., la cual dispone que:**

Las decisiones de la Junta serán finales **a menos que la autoridad nominadora, el ciudadano, o el funcionario o empleado** solicite su revisión judicial radicando una petición al efecto.

**Dicha petición se hará ante la Sala del Tribunal de Primera Instancia del lugar donde resida el ciudadano o donde prestare servicios el funcionario o empleado y dentro del término de treinta (30) días a partir de la notificación de la decisión de la Junta.** La jurisdicción del Tribunal de Primera Instancia estará limitada a cuestiones de derecho y las conclusiones de hecho de la Junta de estar sostenidas

---

[17] 3 L.P.R.A. sec. 1395.

[18] 3 L.P.R.A. sec. 1396.

por evidencia sustancial, serán finales. **(Énfasis nuestro.)**

**La anterior sección quedó implícitamente enmendada por las disposiciones de** la antes citada Sección 4.2 de la L.P.A.U., <u>supra</u>, **y** por virtud del Artículo 4.002(g) de la Ley Núm. 1 de 28 de julio de 1994, también conocida como Ley de la Judicatura de 1994, **según enmendada,**[19] **que dispone lo siguiente:**

> El Tribunal de Circuito de Apelaciones conocerá en los siguientes asuntos:
>
> ...
>
> g) **Mediante auto de revisión, a ser expedido discrecionalmente,** de las decisiones, reglamentos, órdenes y resoluciones de cualquier agencia administrativa, de acuerdo con los términos y condiciones establecidos por las secs. 2101 et seq. del Título 3, conocidas como la "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico". **(Énfasis nuestro.)**
>
> ...

**Hemos resuelto que "cuando los términos de una ley posterior son tan inconsistentes con los de una ley anterior que ambas no pueden subsistir juntas, se entenderá que la posterior ha enmendado implícitamente la anterior, especialmente cuando el resultado de tal interpretación es dar efectividad a la intención legislativa".**[20]

**El Reglamento 5370 de J.A.S.A.P.**[21] **establece los mecanismos y normas procesales que regirán el descargo de la función adjudicativa de dicha Junta. Dicho reglamento dispone que el "apelante" ante la J.A.S.A.P. radicará un escrito de "apelación", en el cual expondrá los hechos constitutivos del reclamo o infracción, los fundamentos de ley o reglamento en que se basa y el remedio que solicita. En aquellos casos en que la Junta lo requiera la agencia apelada deberá**

---

[19] 4 L.P.R.A. sec. 22k (g) (Supl. 2001).
[20] <u>Díaz Marín v. Mun. de San Juan</u>, 117 D.P.R. 334, 344 (1986).

**contestar el escrito de "apelación" interpuesto por el "apelante",**
**dentro del período de tiempo que dicha Junta establezca.[22]  La Junta**
**podrá ordenar una investigación o acto de conciliación.[23]  El**
**referido Reglamento 5370 regula, además, los procedimientos para**
**realizar** el descubrimiento de prueba, citación de testigos,
conferencia con antelación a la vista pública y la celebración de
la vista pública.[24]  **Finalmente, dispone que la resolución que emita**
**la Junta** deberá exponer las determinaciones de hecho y conclusiones
de derecho que fundamenten la adjudicación.[25]  **De lo anterior se**
**desprende claramente la naturaleza de la función adjudicativa de**
**J.A.S.A.P., la cual es la de** un foro de primera instancia.

No albergamos duda que del cuadro fáctico que dio lugar a lo pautado
en Olmeda Díaz v. Depto. de Justicia, supra, surge la existencia de **dos**
**agencias independientes y separadas, con personalidad y poderes**
**claramente definidos y establecidos por ley**. De los hechos de autos
no existen dos agencias con personalidad y poderes establecidos por ley.
No obstante, surge claramente del cuadro fáctico ante nos la existencia
de dos organismos dentro del Departamento de la Familia creados
internamente por esa agencia, una para adjudicar las subastas celebradas
para la adquisición de equipo, materiales y servicios no profesionales
(Junta de Subastas), dentro de un procedimiento informal que no es cuasi
judicial, y otro (Junta Adjudicativa) para entender en la impugnación
de dichas subastas a través de un escrito que denomina como moción de

---

[21] Artículo 1.1 del Reglamento 5370 de la J.A.S.A.P., radicado el 30 de enero de 1996.

[22] Artículo 1.3, Íd.

[23] Artículo 1.5, Íd.

[24] Artículos 1.7, 1.9, 1.10 y 1.12 – 1.14, Íd.

[25] Artículo 1.15, Íd.

reconsideración, a través de un procedimiento adjudicativo, similar al descargado por J.A.S.A.P. en su función adjudicativa.

Tanto la Junta Adjudicativa como la Junta de Subastas, son organismos creados mediante reglamentación interna del Departamento de la Familia.  Los miembros de ambas juntas son funcionarios o empleados del Departamento de la Familia, designados por el Secretario de dicho Departamento.[26]

Es claro que existen diferencias entre aquellos organismos con personalidad y poderes claramente definidos y establecidos por ley (*e.g.* J.A.S.A.P.) y aquellos creados mediante reglamentación interna de una agencia de gobierno (*e.g.* Junta Adjudicativa), cuando ambos conducen procedimientos de adjudicación.  Aún así, entendemos que tales diferencias en nada alteran la definición de "agencia" que emana de la L.P.A.U., en tanto y en cuanto los referidos organismos internos adjudicativos sean los que emitan la resolución final de la cual se recurre al Tribunal de Circuito de Apelaciones.  Veamos.

La Ley Núm. 170 de 12 de agosto de 1988, conocida como Ley de Procedimiento Administrativo Uniforme, supra, estableció un procedimiento administrativo uniforme para el Estado Libre Asociado y derogó la única ley de procedimientos existente en Puerto Rico, la Ley sobre Reglamentos de 1958.[27]  El propósito de la L.P.A.U. fue fijar un cuerpo de reglas mínimas que proveyeran uniformidad al proceso decisorio de la administración pública.  Dicho estatuto sistematiza y crea un

---

[26] En referencia a los miembros que componen la Junta Adjudicativa, el Artículo IV del Reglamento 5431, supra, dispone que los Jueces Adjudicativos **serán funcionarios o empleados del Departamento**, seleccionados de las distintas Administraciones, Divisiones u Oficinas que componen el mismo.  En cuanto a los miembros que componen la Junta de Subastas, el Reglamento 5450, supra, sec. 220.501 (27), establece que dicha junta estará compuesta de cinco (5) miembros, cada uno representando un Componente Operacional del Departamento.

[27] 3 L.P.R.A. secs. 1041-1059.

cuerpo uniforme de reglas mínimas que toda agencia deberá observar al formular reglas y reglamentos que definan los derechos y deberes legales de una clase particular de personas. También gobierna las determinaciones de una agencia en procesos adjudicativos al emitir una orden o resolución que define los derechos y deberes legales de personas específicas.[28]

La L.P.A.U. acogió muchas de las doctrinas de la Ley Federal de Procedimiento Administrativo y tomó en consideración el desarrollo del derecho administrativo a nivel estatal y federal. Se nutrió de la experiencia de algunos estados de la Unión consignada en el "Model State Administrative Procedure Act", y codificó nuestras normas jurisprudenciales. Su ámbito es abarcador y es aplicable a todos los procedimientos administrativos conducidos ante todas las agencias que no estén expresamente allí exceptuadas. Incluye la formulación de reglas y reglamentos y la adjudicación de toda controversia o planteamiento ante la consideración de una agencia, además, comprende los procedimientos de otorgación de licencias y cualquier proceso investigativo que inicie una agencia dentro del ámbito de su actuación legal.[29]

La definición de agencia contenida en la Sección 1.3 de la L.P.A.U. guarda similaridad con la utilizada por los tratadistas más reconocidos en derecho administrativo. El profesor Kenneth Culp Davis define una agencia como un "organismo o entidad gubernamental que no es una corte o un cuerpo legislativo, y que afecta los derechos de partes privadas mediante la adjudicación o la reglamentación". Conforme a los términos del estatuto, todos los organismos gubernamentales autorizados por ley

---

[28] Pagán Ramos v. F.S.E., 129 D.P.R. 888, 897-898 (1992).

[29] Íd., pág. 898.

a "reglamentar, investigar...acusar o adjudicar" están incluidos.[30] También incluye a los funcionarios o personas que tengan esas facultades delegadas por ley.[31]

La L.P.A.U. aplica en todos aquellos procedimientos en que una **agencia** debe adjudicar una controversia. Se incorporan en dicho estatuto unas salvaguardas procesales mínimas para aquellas adjudicaciones de un organismo adjudicativo, cuyo procedimiento es de naturaleza cuasi judicial, que incluye el derecho a la notificación oportuna de los cargos y el presentar evidencia ante un examinador imparcial. La decisión de dichos organismos debe estar fundamentada en el expediente oficial. [32]   **Todas las agencias con poderes**

---

[30] K.C. Davis, <u>Administrative Law Treatise</u>, Sec. 1.2, pág. 9 (1978).

[31] <u>Pagán Ramos v. F.S.E.</u>, <u>supra</u>, pág. 899.

[32] Sección 3.1 de la L.P.A.U., 3 L.P.R.A. sec. 2151, que dispone lo siguiente:

(a) **Cuando por disposición de una ley, regla o reglamento o de este capítulo una agencia deba adjudicar formalmente una controversia, los procedimientos deberán regirse por las disposiciones de este subcapítulo.** No estarán incluidos los procedimientos voluntarios de resolución de disputas establecidos por ley o por reglamentos. Los procedimientos relativos a los asuntos y actuaciones del Secretario de Hacienda con respecto a las leyes de rentas internas del Estado Libre Asociado de Puerto Rico se regirán por las siguientes normas:

(1) Un funcionario designado por el Secretario de Hacienda realizará una determinación preliminar;

(2) el contribuyente no conforme con la determinación preliminar solicitará una vista informal que presidirá un funcionario distinto al que realizó la determinación preliminar. Este realizará la determinación final por delegación del Secretario de Hacienda.

**Se considerarán procedimientos informales no cuasijudiciales y, por tanto, no estarán sujetos a este capítulo, excepto según se provee más adelante, la adjudicación de subastas,** la concesión de préstamos, becas, subsidios, subvenciones, emisiones de deuda, inversiones de capital, reconocimientos o premios, y todos los trámites o etapas del proceso de evaluación de documentos ambientales

**adjudicativos** tienen que adoptar un reglamento para regular sus procedimientos conforme a la Sección 3.2 de la L.P.A.U.[33]

Con fecha del 12 de julio de 2001, R.R.A. presentó ante la Junta Adjudicativa del Departamento de la Familia un escrito titulado "Solicitud de Reconsideración de Adjudicación de Subasta y Producción de Documentos".  Alegó que había sido el postor más bajo para la subasta

---

requeridos por la sec. 671c del Título 23, conocida como "Ley Sobre Política Pública Ambiental" y el reglamento aprobado al amparo de ésta.  En ninguno de éstos procedimientos o las etapas en que éstos se dividan, se requerirá a la agencia que fundamente sus resoluciones con determinaciones de hecho y conclusiones de derecho.  El procedimiento administrativo para el trámite de documentos ambientales se regirá exclusivamente por la reglamentación adoptada por la Junta de Calidad Ambiental para estos fines.  La reconsideración de las decisiones emitidas en todos estos casos se regirán por lo dispuesto en la sec. 2165 de este título, excepto las relativas a subastas que se regirán por lo dispuesto en la sec. 2169 de este título.

**En todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos:**

**(A) Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.**

**(B) Derecho a presentar evidencia.**

**(C) Derecho a una adjudicación imparcial.**

**(D) Derecho a que la decisión sea basada en el expediente.**

(b) La Junta de Calidad Ambiental rendirá un informe a la Asamblea Legislativa no más tarde de ciento cincuenta (150) días después de la fecha de vigencia de esta ley en torno al efecto que la misma ha tenido durante sus primeros ciento veinte (120) días de vigencia en la agilización del trámite y la exposición ambiental.  (Énfasis nuestro.)

[33] 3 L.P.R.A. sec. 2152 que dispone lo siguiente:

Excepto cuando por ley se establezca de otro modo **el procedimiento adjudicativo** ante una agencia podrá iniciarse por la propia agencia o **con la presentación de una querella, solicitud o petición, ya sea personalmente o mediante comunicación por escrito, en el término que establezca la ley o el reglamento, en relación a un asunto que esté bajo la jurisdicción de la agencia.**

celebrada el 8 de junio de 2001.  Que recibió el "Aviso de Adjudicación de Subasta" el 2 de julio de 2001, a los efectos de que la misma había sido adjudicada a IBM, cuya cotización alegadamente había sido más alta que la de R.R.A., pero más baja que la de los otros dos postores, Advanced Computer Technology Inc., en adelante ACT, y GM Group Inc., en adelante GM.  Impugnó la adjudicación de la subasta realizada por la Junta de Subastas del Departamento de la Familia solicitando de la Junta Adjudicativa, a tenor con lo permitido por la L.P.A.U., el Reglamento 5450 y el 5431 del Departamento de la Familia, ordenara la producción del expediente completo de la subasta.  Suplicó, además, que se dejara sin efecto la misma y en su lugar se adjudicara a R.R.A., por ser el postor más bajo, que cumplió con todas las especificaciones, términos, y condiciones de la subasta.  Notificó por correo certificado con acuse de recibo como partes promovidas ante la Junta Adjudicativa, a la Junta de Subastas del Departamento de la Familia y a IBM.  Además, notificó a ACT y a GM.

Las secciones 3.1 y 3.19 de la L.P.A.U., supra, consideran la adjudicación de subastas como un procedimiento informal que no es de naturaleza cuasi judicial.  El Reglamento 5431 del Departamento de la Familia, aprobado a tenor con lo dispuesto en las referidas secciones 3.1 y 3.2, supra, del mismo estatuto, estableció un procedimiento ante la Junta Adjudicativa para impugnar la adjudicación de la subasta.

De nuestro expediente podemos constatar que el reclamo de R.R.A. sobre la impugnación de adjudicación de la subasta es dirigido contra la Junta de Subastas del Departamento de la Familia y IBM, persona jurídica favorecida por tal adjudicación.  **Dicho reclamo tiene que ser resuelto por la Junta Adjudicativa.**  Por imperativo constitucional de

---

Toda agencia deberá adoptar un reglamento para regular sus procedimientos de adjudicación. (Énfasis nuestro.)

debido proceso de ley, el Departamento de la Familia no puede ser parte (Junta de Subastas) y a la misma vez el organismo adjudicativo formal de naturaleza cuasi judicial (Junta Adjudicativa) donde se impugnan las adjudicaciones de las subastas.  Partiendo de la premisa en la cual se apoya el Procurador General y del principio que las actuaciones de gobierno aquí acaecidas se presumen válidas desde una perspectiva constitucional, consideramos a la Junta de Subastas y a la Junta Adjudicativa, ambos organismos del Departamento de la Familia, como dos entes separados e independientes dentro de esa dependencia gubernamental, a los efectos de sus funciones particulares.[34]

La garantía constitucional sobre el debido proceso de ley tiene dos vertientes, a saber: una sustantiva y una procesal.[35]  La vertiente sustantiva protege los derechos y libertades que le concede la Constitución de Puerto Rico y la de Estados Unidos a los ciudadanos frente a la formulación de política pública por el Estado por vía legislativa o a través de reglamentación aprobada por las agencias del Poder Ejecutivo.[36]  Por otro lado, en su vertiente procesal, el debido proceso de ley exige que el Estado le garantice un proceso justo a un

---

[34] Nótese que de una determinación de la Junta Adjudicativa adversa a la Junta de Subastas, el Departamento de la Familia puede acudir como **parte recurrente** ante el Tribunal de Circuito de Apelaciones.  De otro modo, de serle favorable, entonces R.R.A. podría acudir al mismo foro judicial como parte recurrente, en cuyo caso el Departamento de la Familia figuraría como **parte recurrida**.

R.R.A. no cuestionó en forma alguna la validez constitucional de la infraestructura jurídica del Departamento de la Familia, con relación a la forma y funcionamiento de su Junta de Subastas, y de la Junta Adjudicativa, donde se impugnan las adjudicaciones de las subastas por la primera.

[35] Pres. del Senado, res. el 30 de junio de 1999, 99 T.S.P.R. 104, 148 D.P.R. ___ (1999), 99 J.T.S. 110; Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881 (1993).

[36] Íd.

ciudadano, cuando pretende privarlo de su vida, libertad o propiedad.[37]

A esos efectos nos expresamos en Rivera Rodríguez & Co. v. Lee Stowell, etc., supra,[38] de la manera siguiente:

> El debido proceso de ley se manifiesta en *dos* dimensiones distintas: sustantiva y procesal. Bajo el debido proceso *sustantivo*, los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas. Bajo este análisis, el Estado, al aprobar leyes o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. Por otro lado, en el debido proceso de ley *procesal* se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. (Citas omitidas.)

Hemos establecido una serie de requisitos para cumplir con el debido procedimiento de ley en el ámbito procesal al momento de llevarse a cabo un procedimiento adjudicativo por parte del Estado. Se trata de los requisitos siguientes: (1) notificación adecuada del proceso; (2) **proceso ante un funcionario imparcial**; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado; y (6) que la decisión se base en el récord. [39]

Tomando el cuadro fáctico y la infraestructura jurídica del Departamento de la Familia consideramos que la Junta Adjudicativa de esa dependencia de gobierno como organismo adjudicativo **es la agencia recurrida** ante el Tribunal de Circuito de Apelaciones, a tenor con lo dispuesto en la L.P.A.U., que opera de forma distinta, independiente y separada, por no haber sido cuestionado tal asunto en forma alguna a la Junta de Subastas de esa dependencia gubernamental.

---

[37] Íd.

[38] Págs. 887-888.

[39] Rivera Rodríguez & Co. v. Lee Stowell, etc., supra.

En virtud de los fundamentos antes expuestos, el recurso de revisión interpuesto por R.R.A. ante el Tribunal de Circuito tenía que ser notificado tanto **a la Junta Adjudicativa, como agencia recurrida** que emitió la resolución que se pretendió revisar ante el Tribunal de Circuito de Apelaciones, **como al Departamento de la Familia, dependencia gubernamental que funge como parte recurrida.** No obstante, entendemos que al no haberse establecido con anterioridad un precedente claro que dispusiera de la controversia planteada ante nos, la norma adoptada debe ser de aplicación prospectiva.

### III

**Por los fundamentos antes expuestos, procede expedir el auto de <u>certiorari</u> solicitado y dictar sentencia confirmando el dictamen emitido por el Tribunal de Circuito de Apelaciones.**

**Se dictará sentencia de conformidad.**

Efraín E. Rivera Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rafael Rosario & Associates,
Inc.

      Recurrido

         v.                                              Certiorari

                            CC-2001-927

Departamento de la Familia

      Peticionario

SENTENCIA

San Juan, Puerto Rico, a 21 de junio de 2002.

**Por los fundamentos expuestos en la Opinión que antecede, a la cual se le ha impartido carácter prospectivo, y que se hace formar parte íntegra de la presente, se expide el auto de <u>certiorari</u> solicitado y se dicta sentencia confirmando el dictamen emitido por el Tribunal de Circuito de Apelaciones.**

**Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García disiente sin opinión escrita. Los Jueces Asociados señores Rebollo López y Fuster Berlingeri no intervinieron.**

**Patricia Otón Olivieri**
**Secretaria del Tribunal Supremo**