ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| CARLOS PILLOT OCASIO<br><br>Recurrente<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrido | **KLRA202500016** | *REVISIÓN ADMINISTRATIVA* procedente de Junta de Libertad Bajo Palabra<br><br>Caso Núm.:60496<br><br>Sobre:<br>Libertad Bajo Palabra |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 9 de mayo de 2025.

Comparece ante este foro el Sr. Carlos Pillot Ocasio (señor Pillot o "el recurrente") y nos solicita que revisemos una *Resolución* emitida por la Junta de Libertad Bajo palabra (JLBP o "parte recurrida"), el 6 de noviembre de 2024, siendo notificada el 12 de noviembre de 2024. Mediante el referido dictamen, la Junta revocó el privilegio de Libertad Bajo Palabra por violación a las condiciones 12 y 18 del *Mandato de Libertad Bajo Palabra* (Mandato).

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** el dictamen recurrido.

## I.

Según surge del expediente, el señor Pillot disfruta del privilegio de Libertad Bajo Palabra desde el 9 de marzo de 2022.[1] Lo anterior, sujeto a ciertas condiciones, entre ellas, mantenerse "interno en el programa UPENS, con pases, hasta que dicho programa

---

[1] *Certificado de Libertad Bajo Palabra Enmendado,* págs. 1-2 del apéndice del recurso.

Número Identificador
SEN2025 _____

certifique el máximo de su tratamiento, extinga su sentencia y/o la Junta determine lo contrario." No obstante, el 10 de junio de 2024, la JLBP diligenció una *Orden de Arresto*, en la cual indicó que había violado cinco (5) condiciones, la número 11, 15, 12, 18 y 8 del Mandato.[2] En esencia, indicó que el señor Pillot abandonó el hogar de tratamiento interno UPENS, por lo cual, no mostró interés en su proceso de rehabilitación.

Posteriormente, el 2 de julio de 2024, fue celebrada la *Vista Sumaria Inicial*, donde determinaron causa probable por violaciones a las condiciones número 12 y 18, mientras que las demás fueron archivadas.

El 12 de septiembre de 2024, se llevó a cabo la *Vista Final*, a la cual compareció el señor Pillot, su representante legal, el Lcdo. Antonio Arraiza Miranda, y el técnico de servicios socio penales del Programa de Comunidad Norte Central, el Sr. Víctor Mora Feliciano (señor Mora), en sustitución de la Sra. Julissa Beauchamp – técnica sociopenal y persona encargada del caso.[3] Durante la vista, el señor Mora leyó el *Informe de Querella* preparado por la señora Beauchamp, el cual exponía que a pesar de que el recurrente tenía un pase a la comunidad previamente programado, en la misma fecha que abandonó el programa, entiéndase el 7 de junio de 2024, durante horas de la tarde le habían cancelado el pase.[4] Por su parte, el señor Pillot indicó que ya llevaba veintisiete (27) meses en el programa el cual había finalizado desde septiembre del 2023, y que el Sr. Ramón Rodríguez Arroyo (señor Rodríguez), Presidente de

---

[2] *Orden*, págs. 3-6 del apéndice del recurso.
[3] Transcripción de Regrabación de Vista Final, anejo I de la *Moción Conjunta para presentar la Transcripción Estipulada […]*.
[4] TPO, pág. 8, líneas 6-9.

la Fundación UPENS, le había dado permiso de salir cada quince (15) días.[5]  De otra parte, el señor Mora leyó una carta de la Fundación UPENS emitido el 2 de julio de 2024.   En esencia, indicaba que no tenían ningún inconveniente con que el señor Pillot continuara su proceso de reintegración a la sociedad con ayuda del programa, pero que los arreglos de facturación quedarían entre el recurrente o un familiar.[6]  Finalmente, el señor Mora mencionó "[…] el caso, al no ser mío, pues, yo no me atrevería a tomar esa determinación, porque…, pues, los informes todos indican a que el día de hoy ha presentado buenos ajustes; pero yo no he intervenido directamente, que no me atrevería a tomar esa decisión."[7]  Por su parte, la Oficial Examinadora, indicó que se inclinaba a recomendar que el señor Pillot volviera a UPENS en el proceso de transición.[8]

Luego de celebrada la vista final, el 6 de noviembre de 2024, siendo notificada el 12 de noviembre de 2024, la JLBP emitió la correspondiente *Resolución*.[9]  Mediante esta, determinó revocarle al recurrente el privilegio de Libertad Bajo Palabra por violación a las condiciones número 12 y 18.[10] En esta, concluyó lo siguiente:

---

[5] TPO, pág. 9, líneas 6-9.
[6] TPO, pág. 15, líneas 5-11.
[7] TPO, pág. 31, líneas 5-10.
[8] TPO, pág. 32, líneas 17-20.
[9] *Resolución*, págs. 25-30 del apéndice del recurso.
[10] La condición número 12 dispone:
> La Junta de Libertad Bajo Palabra podrá decretar la suspensión indefinida de su libertad bajo palabra en la comunidad y ordenar su reingreso en cualquier institución apropiada del gobierno cuando, a juicio de la Junta de Libertad Bajo Palabra, considere que el otorgarle el privilegio de libertad bajo palabra, en su caso, fuere incompatible con el bienestar público, con su propio bienestar o seguridad, el de sus familiares o con personas con quien conviviere.

La condición número 18 establece:
> El liberado se mantendrá internado en el programa **UPENS, con pases**, hasta que dicho programa certifique el máximo de su tratamiento, extinga su sentencia y/o la Junta determine lo contrario. Deberá cooperar con el personal directivo y profesional del hogar en el que se le interne y participar de toda terapia, consejería y tratamiento. No podrá abandonar

1. El querellado el 7 de junio de 2024, abandonó el Programa UPENS y se fue sin autorización de la tss Beauchamp, se desconocía paradero.

2. El querellado regresó al Programa el 10 de junio de 2024, siendo aceptado nuevamente. Le realizaron muestra toxicológica y arrojó negativo al uso de sustancias controladas.

3. El querellado fue arrestado en UPENS el 10 de junio de 2024.

4. El querellado que es aceptado nuevamente en el mencionado Programa, con la condición de que éste o su familia costee el pago.

5. El querellado cuenta con un apartamento perteneciente a su progenitora en vega Baja que está preparado para ser habitado y queda a más de 500 pies de las tres (3) escuelas que hay en dicho municipio, según lo exige el Registro de Personas Convictas por Delitos Sexuales. (Ley 266-2004).

6. El querellado con su conducta demostró poco compromiso y no tener interés en su proceso de rehabilitación, por ende, incumplió claramente con las condiciones del privilegio de Libertad Bajo Palabra.

7. El querellado conoce y comprende las consecuencias de sus actuaciones. Debido a la naturaleza y circunstancias de los delitos de agresiones sexuales cometidos, el querellado con su conducta puso en riesgo su seguridad y la de la comunidad.

Por ello, denegó la solicitud de que el recurrente continuara disfrutando del privilegio de Libertad Bajo Palabra en la libre comunidad ni en tratamiento interno en UPENS. Esbozó que, el señor Pillot no tenía un compromiso genuino y que no había demostrado esfuerzo por mantener ajustes positivos durante su proceso de rehabilitación.

---

dicho programa interno para ingresar a otro sin permiso de la Junta y con prueba certificada del Programa de que el liberado ha demostrado tener interés en cooperar para rehabilitarse. No podrá abandonar dicho tratamiento interno para vivir en la libre comunidad hasta tanto la Junta lo autorice y demuestre mediante certificación del programa, que puede hacerlo y disponga de Empleo o Estudios corroborados por el Programa de Comunidad.

En desacuerdo, el 2 de diciembre de 2024, el señor Pillot presentó una *Solicitud de Reconsideración*.[11] En esencia, sostuvo que de la misma resolución resaltaban más los aspectos positivos que negativos sobre su comportamiento. Asimismo, señaló que la única falta que provocó la revocación del privilegio, fue la interpretación confusa que motivó que tuviera un pase en una fecha no autorizada. Por ello, alegó que no incurrió en ningún tipo de acción delictiva que ameritara la revocación del privilegio de Libertad Bajo Palabra.

El 12 de diciembre de 2024, la JLBP notificó una *Resolución*, mediante la cual denegó la solicitud de reconsideración.

Aun inconforme, el 10 de enero de 2025, el señor Pillot presentó el recurso de epígrafe y señaló la comisión de los siguientes errores:

> Erró la JLBP al violar el debido proceso de ley del recurrente, revocando su libertad bajo palabra sin considerar la totalidad de los hechos relevantes que constaban en su expediente y desfilaron en vista final de revocación.

> Erró la JLBP al no cumplir con las garantías procesales establecidas en el Reglamento 9232.

El 15 de enero de 2025, emitimos una *Resolución* mediante la cual le concedimos a la parte recurrida el término dispuesto en el Reglamento de este Foro para que presentara su alegato en oposición.

Posteriormente, las partes presentaron una *Moción Conjunta para presentar la Transcripción Estipulada de la Prueba Oral desfilada en la Vista Administrativa.*

---

[11] *Solicitud de Reconsideración*, págs. 31-42 del apéndice del recurso.

El 17 de marzo de 2025, el señor Pillot presentó su *Alegato Suplementario*.

Mientras que, el 15 de abril de 2025, la JLBP siendo representada por la Oficina del Procurador General de Puerto Rico, presentó su *Escrito en Cumplimiento de Resolución*.

Así las cosas, con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**-A-**

Es sabido que, al revisar las determinaciones administrativas finales, los tribunales apelativos estamos compelidos a conceder deferencia, por la experiencia y conocimiento pericial que se presume tienen los organismos ejecutivos y municipales para atender y resolver los asuntos que le han sido delegados. *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde, LLC,* 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016). Al respecto, el Tribunal Supremo de Puerto Rico ha reiterado que las determinaciones de los organismos administrativos "poseen una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas". *Rolón Martínez v. Supte. Policía*, supra*; Torres Rivera v. Policía de PR*, supra; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012); *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002-1003 (2011). Por ende, nuestra intervención sólo se justifica cuando el ente administrativo haya obrado de forma arbitraria, ilegal

o irrazonable. En esas circunstancias, entonces, cederá la deferencia que ostenta en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra. *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009). En torno a esto, en *Torres Rivera v. Policía de PR*, supra, el Tribunal Supremo expuso las normas básicas sobre el alcance de la revisión judicial:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Torres Rivera v. Policía de PR*, supra, pág. 628.

Así, pues, es norma establecida que el norte al ejercer nuestra facultad revisora es el criterio de razonabilidad. *Super Asphalt v. AFI y otro*, supra, pág. 821; *Graciani Rodriguez v. Garage Isla Verde, LLC*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626; *Empresas Loyola v. Com. Ciudadanos*, 186 DPR 1033, 1042-1043 (2012). Por lo tanto, intervendremos únicamente cuando el organismo recurrido haya actuado de una manera tan irrazonable que su actuación constituya un abuso de discreción. *Super Asphalt v. AFI y otro*, supra, pág. 821; *Graciani Rodriguez v. Garage Isla*

*Verde, LLC,* supra, pág. 127; *Rolón Martínez v. Supte. Policía*, supra.

**-B-**

Tanto nuestra Constitución como la Constitución Federal reconocen el derecho fundamental al debido proceso de ley. Const. EE. UU., Enmiendas V y XIV, 1 LPRA; Const. ELA Art. II, sec. 7, 1 LPRA. Este se segrega en dos vertientes principales: la sustantiva y la procesal. *Rafael Rosario & Assoc. v. Depto. Familia*, 157 DPR 306, 329 (2002).

En su vertiente procesal, le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. *Hernández v. Secretario*, 164 DPR 390, 394-395 (2005). En virtud de ello, todo procedimiento adversativo debe cumplir con los siguientes requisitos: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado; y, (6) que la decisión se base en el récord. *Álvarez v. Arias*, 156 DPR 352, 365 (2002).

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017 (LPAU), hizo extensiva ciertas garantías mínimas inherentes al debido proceso de ley a los procedimientos administrativos. De tal forma, la Sección 3.1 de la LPAU establece que en todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos:

> (A) Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.

(B) Derecho a presentar evidencia.

(C) Derecho a una adjudicación imparcial.

(D) Derecho a que la decisión sea basada en el expediente. 3 LPRA sec. 9641.

–C–

La Junta de Libertad Bajo Palabra, creada mediante la aprobación de la Ley Núm. 118 de 22 de julio de 1974 (Ley Núm. 118), según enmendada, 4 LPRA sec. 1501 *et seq.*, previo a revocar el privilegio de libertad bajo palabra, debe concederle al liberado unas garantías procesales. *Benítez Nieves v. ELA*, 202 DPR 818, 825 (2019).

En específico, el Artículo 5 de la Ley Núm. 118 de 22 de julio de 1974 (Ley Núm. 118), según enmendada, 4 LPRA sec. 1501 *et seq.*, 4 LPRA sec. 1505, establece el procedimiento de revocación que debe seguir la JLBP. En lo atinente, dispone que la JLBP debe celebrar la vista final para determinar si procede la revocación de la libertad bajo palabra. "Antes de la celebración de dicha vista la Junta deberá practicar una investigación y solicitar el informe de evaluación de la Administración de Corrección sobre la alegada violación a las condiciones de la libertad bajo Palabra". *Íd.* La decisión de la Junta, formulada a base de la preponderancia de la prueba, se hará por escrito y contendrá las determinaciones de hecho, la prueba en que la decisión se basó y las razones que justifican la revocación. *Íd.*

De igual modo, con la aprobación del *Reglamento de la Junta de Libertad Bajo Palabra*, Reglamento Núm. 9232, del 18 de noviembre de 2020 (Reglamento Núm. 9232), la JLBP adoptó las disposiciones sobre el proceso de

adjudicación establecidas en la LPAU. Art. 2 del Reglamento Núm. 9232.

En lo pertinente, el Artículo XIII del Reglamento Núm. 9232, Sección 13.4 – Violación de condiciones, dispone lo siguiente:

**A. Investigación Preliminar**

1. Cuando el técnico de servicios sociopenales asignado a la supervisión del liberado advenga en conocimiento de que éste ha incurrido en conducta constitutiva de probable violación de las condiciones impuestas por la Junta en el mandato de libertad bajo palabra, procederá a realizar la investigación sobre el particular dentro de los próximos de quince (15) días laborables.

2. Culminada la investigación, el técnico de servicios sociopenales someterá a la Junta un informe en el término de treinta (30) días laborables, (…).
3. Evaluado el informe, la Junta determinará si procede citar para vista de investigación u ordenar el arresto del Liberado.

4. En aquellos casos en que la Junta advenga en conocimiento de que un liberado ha incurrido en probable violación a las condiciones del mandato de libertad bajo palabra, sin que medie el informe del técnico de servicios sociopenales, la Junta, motu proprio, podrá citar para vista de investigación u ordenar el arresto.

[…]

**E. Vista Final**

1. La Junta celebrará una vista final para determinar si procede la revocación de la libertad bajo palabra.

[…]

3. La vista final se celebrará en la sede de la Junta, con la comparecencia física del liberado o mediante sistema de videoconferencia del liberado y su abogado, de tenerlo, así como el técnico de servicios sociopenales y los testigos a ser presentados por las partes. (…).

[…]

7. Durante la vista el liberado tendrá los siguientes derechos:

a. Derecho a prepararse adecuadamente.

b. Derecho a estar representado por abogado. En caso de que el liberado no tenga representante legal, la Junta le asignará uno.

c. Una vez se le asigne representación legal, el liberado tiene Derecho a renunciar a estar asistido de abogado, previa orientación sobre sus derechos, dicha renuncia sea libre y voluntaria, y por escrito.

d. Derecho a confrontar la prueba en su contra, sujeto a la protección de aquellas personas entrevistadas a quienes se les garantizó anonimato por razón de seguridad.

e. Derecho a presentar prueba a su favor.

[…]

10. Las Reglas de Evidencia no aplicarán en este proceso, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida y justa del procedimiento. Las Reglas de Procedimiento Criminal aplicarán siempre y cuando no sean incompatibles con la naturaleza sumaria e informal de la vista.

Por último, la determinación que finalmente tome la Junta se hará luego de evaluarse el informe sometido por el Oficial Examinador. *Íd*.

## III.

En el caso de autos, el señor Pillot nos solicita la revisión de la *Resolución* emitida por la JLBP el 6 de noviembre de 2024. El recurrente planteó dos (2) señalamientos de error por parte de la Junta. Veamos.

En esencia, en su primer señalamiento de error, adujo que la JLBP incidió al revocar el privilegio sin tomar en consideración la totalidad de los hechos. Añadió que, la *Orden de Arresto* fue emitida sin que tuvieran todos los elementos necesarios para sostener la alegada violación a la condición número 18 del *Mandato*.

Puesto que, reitera que el incidente fue producto de un malentendido y falta de comunicación entre las entidades, y la propia fundación así lo había reconocido. De igual forma, arguye que no cometió la violación a la condición número 12, "pues una persona que goza del beneficio de pases mensuales cumple con sus obligaciones y obedece las instrucciones de TSP, aun en medio de una falsa imputación de fuga, no constituye un peligro para la sociedad."

En cuanto a su segundo señalamiento de error, alega que erró la Junta al no cumplir con las garantías procesales establecidas en el Reglamento 9232. Explica que, conforme dispone dicho Reglamento, la Junta debió realizar una investigación preliminar de los hechos y tomar en cuenta el historial del liberado, lo cual no hizo.

Finalmente, reitera que es la primera vez que se enfrenta a este tipo de incidente, además, que UPENS recomendó su regreso al tratamiento, puesto que, no se trató de un abandono del programa sino un malentendido en la comunicación. Así las cosas, esboza que la determinación de la Junta fue arbitraria.

Por su parte, la JLBP alega que la revocación del privilegio fue correcta, debido a que, el señor Pillot decidió abandonar el programa UPENS donde recibía tratamiento, aun cuando tenía conocimiento que su solicitud de pase no había sido aprobado. Plantea que, tanto la supervisora de tratamiento, como la trabajadora social de UPENS le remitieron a la señora Beauchamp un *Informe de Novedades en Tratamiento*, donde le informaban que el recurrente había abandonado el programa. Sostiene que dicho *Informe*, indicaba que habían

orientado al señor Pillot sobre el protocolo de abandono de tratamientos y que el Director de Propiedad, había realizado esfuerzos de detención, pero el recurrente aun así había recogido sus pertenencias y se marchó.

De otra parte, añadió que aun cuando la Oficial Examinadora y el señor Mora recomendaron que el recurrente regresara a UPENS, la decisión final es de ellos, por lo que, reitera que su decisión fue correcta. Finalmente arguye que, contó con prueba suficiente, entre ellas: el *Informe de Querella*, *Informe de Novedades de Tratamiento*, la *Querella* que realizó UPENS ante el Negociado de la Policía y el *Informe de Querella Adicional*, para que pudiera emitir una *Orden de Arresto* y revocar el privilegio de Libertad Bajo Palabra.

Sobre la alegada violación al debido proceso de ley, alega que de la misma *Transcripción de la Prueba Oral* surge que la Oficial Examinadora antes de comenzar con el testimonio del señor Mora, preguntó al representante legal del recurrente si tenía reparos en que éste sustituyera a la señora Beauchamp, y el Lcdo. Arraiza expresó que no tenía objeción. Por todo ello, concluyó que la conducta del recurrente constituía un desafío a las condiciones del *Mandato* y funcionarios de UPENS. Asimismo, que la determinación de revocar el privilegio de Libertad Bajo palabra es correcta y estaba basada en la evidencia presentada.

Conforme a la normativa antes expuesta, la JLBP debe celebrar una vista final para determinar si procede la revocación de la Libertad Bajo Palabra. Sin embargo, antes de la celebración de dicha vista la Junta debe realizar una investigación y solicitar un informe de evaluación de la Administración de Corrección sobre la

alegada violación a las condiciones de la Libertad Bajo Palabra. Ley Núm. 118, *supra*. Culminado el proceso de revocación, la Junta podrá determinar si revoca el privilegio de libertad bajo palabra, amonesta, desestima la querella o modifica las condiciones del mandato. Reglamento Núm. 9232, *supra*.

En el presente caso, fue radicado un *Informe de Querella* en contra del señor Pillot por abandonar el tratamiento en el programa de UPENS. Posteriormente, fue celebrada la *Vista Final* donde determinaron revocar el privilegio de Libertad Bajo palabra, el cual había sido concedido desde el 9 de marzo de 2022, por violar las condiciones número 12 y 18 del Mandato. En esencia, la condición número 12 dispone que la Junta puede suspender la libertad bajo palabra en la comunidad, cuando a su juicio, consideren que otorgar el privilegio es incompatible con su bienestar y seguridad o la de otros. Mientras que, la condición numero 18 establece que el liberado debe mantenerse interno en el programa UPENS, con permiso de pases, hasta que certifiquen el máximo de tratamiento, extinga su sentencia o la Junta determine lo contrario.

Según surge del expediente, el 7 de junio de 2024, el señor Pillot abandonó el programa UPENS aun cuando le habían informado que su pase de salida no había sido aprobado. El peticionario sostiene que se debió a un malentendido en la comunicación entre las entidades, no obstante, dicha actuación no justifica que aun así incumplió con las condiciones del *Mandato* y desafío la autoridad de los funcionarios de UPENS.

De otra parte, en la *Vista Final* la señora Beauchamp no estuvo disponible, por lo que, fue sustituida por el

señor Mora. Durante la *Vista*, la Oficial Examinadora le preguntó al representante legal del señor Pillot si tenía alguna objeción con la sustitución de la técnico socio penal, a lo que respondió "ninguna, vuestro honor". De igual forma, surge del *Alegato Suplementario* que "las partes estipularon que no había objeción en la sustitución de la técnica socio penal asignada al caso, puesto que el señor Mora Feliciano conocía el caso." Así las cosas, no procede el argumento sobre que la Junta no tuvo la oportunidad de confirmar los hechos por voz de la señora Beauchamp, ya que renunció a que ella estuviera presente.

Por consiguiente, al evaluar con detenimiento toda la prueba presentada, concluimos que la JLBP realizó un ejercicio adecuado de la amplia discreción que tiene para revocar la libertad bajo palabra a cualquier persona sujeta a su jurisdicción. Es por ello que, procedemos a confirmar la determinación recurrida.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Resolución* recurrida.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones