ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| SKYTEC, INC.<br>RECURRENTE<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE BAYAMÓN; HON. JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE BAYAMÓN<br><br>RECURRIDO<br><br>NORTH SIGHT COMMUNICATIONS, LLC<br><br>PROPONENTE AGRACIADO-PARTE CON INTERÉS | KLRA202500171 | Revisión judicial procedente de la Junta de Subastas del Municipio Autónomo de Bayamón<br><br>Caso Núm.<br>SP-2024-25-05<br><br>Sobre:<br>Impugnación de adjudicación de solicitud de propuesta |

Panel integrado por su presidenta, la Jueza Martínez Cordero, el Juez Cruz Hiraldo y la Juez Lotti Rodríguez. [1]

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico a 19 de mayo de 2025.

I.

El 24 de marzo de 2025, Skytec, Inc. (Skytec), presentó ante nos un *Recurso de Revisión Judicial* mediante el cual, impugna la adjudicación de una Subasta efectuada por el Municipio Autónomo de Bayamón (Municipio), para la adquisición de consolas de comunicación y artículos relacionados en los pueblos de Bayamón, Cataño, Toa Alta de la Región Metro 1 de las Agencias Municipales de Manejo de Emergencias de Desastres (AMMEAD) y Policías Municipales.

---

[1] Conforme la OATA2025-069 del 7 de mayo de 2025, se asignó a la Juez Glorianne M. Lotti Rodríguez en sustitución del Juez Abelardo Bermúdez Torres.

Número Identificador

SEN2025_____

Skytec arguyó que, tras publicar el Requerimiento de Propuestas (RFP), los días 16 al 22 de enero de 2025, el Municipio celebró una reunión mandataria el 28 de enero de 2025, a la que asistió junto a North Sight Communications LLC. (North Sight). El Municipio estableció que la entrega de propuestas debía llevarse a cabo en o antes del 11 de febrero de 2025. El 4 de febrero de 2025 el Municipio celebró una vista compulsoria para brindar información y contestar las preguntas de los participantes referente a las propuestas. El 27 de febrero de 2025 se celebró la apertura de la Solicitud de Propuesta. En ese día, Skytec y North Sight presentaron sus respectivas propuestas principales y alternas.

El 14 de marzo de 2025, el Municipio mediante *Resolución*,[2] adjudicó a North Sight la buena pro de la Solicitud de la Propuesta. Especificó que ambas propuestas cumplieron con los términos, condiciones y especificaciones mínimas requeridas, pero que las propuestas de North Sight resultaron más económicas que las de Skytec.

Finalmente, tras recibir de parte del Municipio la *Notificación de Adjudicación* y por no estar conforme con la misma, Skytec acudió ante nos. Plantea:

> **PRIMER ERROR:** Erró la Junta de Subastas al adjudicar la buena pro de la solicitud de propuesta a North Sight a pesar de este no haber cumplido los requisitos mandatorios y técnicos de los pliegos, lo que conlleva su descalificación.
>
> **SEGUNDO ERROR:** Erró la Junta de Subastas al no adjudicar la buena pro de la solicitud de propuesta a Skytec ya que fue el único licitador que cumplió con todos los requisitos mandatorios y técnicos del pliego de subasta.

El 26 de marzo de 2025, notificada el 28, concedimos diez (10) días al Municipio para que compareciera a fijar su posición. El 3 de abril de 2025, North Sight presentó su *Alegato en Oposición* y el 7 de abril de 2025, el Municipio presentó su posición referente al

---

[2] Véase Apéndice 2 del Recurso, págs. 8-17.

presente recurso. Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

II.

A.

Como es de conocimiento, la subasta tradicional y el requerimiento de propuestas o conocido por sus siglas en ingles "*Request for Proposal*" (RFP) son los dos vehículos procesales que utiliza tanto el gobierno central como los Municipios para la adquisición de sus bienes y servicios.[3] El propósito principal de estos es "proteger el erario público fomentando la libre y diáfana competencia entre el mayor número de licitadores posibles".[4] En lo concerniente al RFP, el Tribunal Supremo ha distinguido los procedimientos de dicho vehículo procesal de los de la subasta tradicional. Así, pues, ha reiterado que desde el caso *R & B Power, Inc. v. Estado Libre Asociado de P.R.,*[5] se estableció que "el RFP se destaca por ser un procedimiento informal y flexible que permite al oferente negociar con el gobierno central o municipal y enmendar o revisar las ofertas antes de la adjudicación de un contrato de adquisición de bienes y servicios".[6]

Por otro lado, el Tribunal Supremo ha dispuesto que del RFP debe surgir "los requerimientos, los términos y las condiciones, así como los factores que han de considerarse en la evaluación para la adjudicación de la subasta".[7] Cabe señalar que no existe legislación que regule con uniformidad el RFP. En circunstancias en las que se propicie un RFP en agencias administrativas, este procedimiento podrá ser regulado por las disposiciones de la Ley de Procedimientos Administrativos Uniformes de Puerto Rico, Ley Núm. 38-2017,

---

[3] *Puerto Rico Asphalt v. Junta,* 203 DPR 734, 737 (2019).
[4] *Id.*
[5] *R & B Power, Inc. v. Estado Libre Asociado de P.R.,* 170 DPR 606, 621 (2007).
[6] *PR Eco Park et. al. v. Mun. De Yauco,* 202 DPR 505, 531-532 (2019).
[7] *Id.,* pág. 532.

según enmendada, (LPAU)[8]. Sin embargo, es altamente conocido que los Municipios no están regulados por las disposiciones de LPAU, pues estos están expresamente excluidos de la definición de agencia.[9]

El Art. 3.19 de la LPAU dispone sobre los procesos de licitación pública, y el procedimiento y término para solicitar revisión administrativa en la adjudicación de estos.[10] Específicamente, establece que, los procesos de licitación pública se celebrarán de conformidad a la Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019, Ley Núm. 73-2019, según enmendada, **salvo los procesos de licitación pública municipal que se realizarán de conformidad al Código Municipal de Puerto Rico**.[11]

B.

El Código Municipal de Puerto Rico, Ley Núm. 107-2020, según enmendada, establece que todo municipio constituirá y tendrá una junta de subastas.[12] En lo pertinente, el Art. 2.040(a) de aludida ley dispone:

> La Junta entenderá y adjudicará todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de arrendamiento de cualquier propiedad mueble o inmueble y de servicios, tales como servicios

---

[8] Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 L.P.R.A. sec 9603, inciso a.

[9] PR Eco Park et. al. v. Mun. De Yauco, supra, en la pág. 533.

[10] 3 LPRA sec. 9659 (enmendado por la Ley Núm. 48-2024 y por la Ley Núm. 153-2024).

[11] Ley Núm. 107 de 13 de agosto de 2020, según enmendada, Código Municipal de Puerto Rico, 21 LPRA sec. 7001 *et seq.* "La parte adversamente afectada por una determinación en un proceso de licitación pública podrá presentar una solicitud de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales dentro del término de diez (10) días calendario, contados a partir del depósito en el correo federal o la notificación por correo electrónico, lo que ocurra primero, de la adjudicación del proceso de licitación pública. La Junta Revisora de Subastas de la Administración de Servicios Generales deberá determinar si acoge o no la solicitud de revisión administrativa, dentro del término de diez (10) días calendario de haberse presentado la solicitud de revisión administrativa. Si dentro de ese término, la Junta Revisora de la Administración de Servicios Generales determina acoger la misma, tendrá un término de treinta (30) días calendario adicionales para adjudicarla, contados a partir del vencimiento de los diez (10) días calendario que tenía para determinar si la acogía o no. La Junta Revisora de la Administración de Servicios Generales podrá extender el término de treinta (30) días calendario, una sola vez, por un término adicional de quince (15) días calendario". *Id.* (Énfasis nuestro).

[12] *Id.*

de vigilancia, mantenimiento de equipo de refrigeración y otros.

a. *Criterios de adjudicación* — **Cuando se trate de compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor razonable más bajo.** En el caso de ventas o arrendamiento de bienes muebles e inmuebles adjudicará a favor del postor más alto. La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta.

La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo o el más alto, según sea el caso, si con ello se beneficia el interés público. En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación.

La adjudicación de una subasta será notificada a todos los licitadores certificando el envío de dicha adjudicación mediante correo certificado con acuse de recibo, o mediante correo electrónico, si así fue provisto por el licitador o licitadores. En la consideración de las ofertas de los licitadores, la Junta podrá hacer adjudicaciones por renglones cuando el interés público así se beneficie. La Junta de Subasta notificará a los licitadores no agraciados las razones por las cuales no se le adjudicó la subasta. Toda adjudicación tendrá que ser notificada a cada uno de los licitadores, apercibiéndolos del término jurisdiccional de diez (10) días para solicitar revisión judicial de la adjudicación ante el Tribunal de Apelaciones, de conformidad con el Artículo 1.050 de este Código.[13]

Según la sección 13 de la parte II del Reglamento Núm. 8873 de 19 de diciembre de 2016, el aviso de adjudicación de subastas debe contener:

. . .
(3) La notificación de adjudicación o la determinación final de la Junta, que se enviará a todos los licitadores que participaron en la subasta, debe contener la siguiente información:
    a) nombre de los licitadores;
    b) **síntesis de las propuestas sometidas**;
    c) factores o criterios que se tomaron en cuenta para adjudicar la subasta y **razones para no adjudicar a los licitadores perdidosos**;
    d) derecho a solicitar revisión judicial de la adjudicación o acuerdo final, ante el Tribunal

---

[13] 21 LPRA sec. 7216 (Énfasis nuestro).

de Apelaciones, y el término para ello, que es dentro del término para impugnar la subasta ante el Tribunal de Apelaciones.[14]

Referente al caso que nos ocupa, el Municipio de Bayamón publicó el RFP bajo el Pliego SP-2024-25-05. En lo específico, el Capítulo 5.1 establece que el Comité de Evaluación ponderará las propuestas sometidas, basado en los siguientes criterios:

A. Requisitos Obligatorios; B. Requisitos Técnicos (Especificaciones); C. Propuesta Económica; D. Término de Entrega; E. Garantías; F. Referencias-Experiencias.[15]

Por otra parte, en cuanto al proceso de adjudicación, el Capítulo 5.4 del antedicho Pliego establece que:

Una vez analizada las recomendaciones del Comité Evaluador, la Junta de Subastas analizará, determinará y **adjudicará la "Buena Pro", al o a los licitadores responsivos cuyas propuestas representen el mejor valor para el Municipio de Bayamón,** y notificará la determinación final mediante Resolución o Aviso de Adjudicación.[16]

Ahora bien, el Art. 1.50 del Código Municipal de Puerto Rico establece:

**El Tribunal de Apelaciones revisará, el acuerdo final o adjudicación de la Junta de Subastas**, el cual se notificará por escrito y mediante copia por correo escrito regular y certificado a la(s) parte(s) afectada(s). La solicitud de revisión se instará dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la copia de la notificación del

---

[14] Reglamento para la Administración Municipal, Núm. 8873 de 19 de diciembre de 2016, Sec. 13, en la págs. 118-119.
[15] Pliego SP-2024-25-05, Capítulo 5.1, en la pág. 16. En cuanto a los requisitos, dispone: A. Requisitos obligatorios: 1. Fianza de Garantía de Licitación (Bid Bond) por la cantidad de mil dólares ($1,000) valida por ciento veinte (120) días; 2. Registro de Licitadores del Municipio de Bayamón; 3. Declaración Jurada del Licitador; 4. Registración en el System for Award Management; 5. Licencia o certificación; 6. Seguros Necesarios para proteger los empleados que trabajen en la facilidad de los Municipios. B. Requisitos técnicos: el proponente tiene que incluir la literatura con las especificaciones de los equipos ofertados e ilustración de estos para determinar si cumple con lo solicitado; C. Propuesta económica: la decisión final no se basará primordialmente en el precio. La propuesta será evaluada por la sumatoria de todas las calificaciones expuestas una vez evaluadas y valorizadas con puntos; D. Término de Entrega: el término de entrega es un criterio importante para la selección de la compañía agraciada. El proponente que detalle un término de entrega más corto, tendrá mayor puntaje en la evaluación; E. Garantía: El proponente tiene que informar sobre la(s) garantía(s) de cada producto o artículo solicitado, y del proceso de reclamación; (F). Referencias: Se valorará y tomará en consideración, entre otras cosas, la evidencia de pasadas experiencias del proponente. La Junta de Subasta y/o el Comité Evaluador se reserva el derecho de verificar cada una de las referencias informadas por el licitador.
[16] *Id.,* Capítulo 5.4, en la pág. 17.

acuerdo final o adjudicación. La notificación deberá incluir el derecho de la(s) parte(s) afectada(s) de acudir ante el Tribunal de Circuito de Apelaciones para la revisión judicial; término para apelar la decisión; fecha de archivo en auto de la copia de la notificación y a partir de qué fecha comenzará a transcurrir el término. La competencia territorial será del circuito regional correspondiente a la región judicial a la que pertenece el municipio.[17]

El Tribunal Supremo ha reiterado que, para poder "cumplir con su obligación constitucional y asegurar que el derecho a obtener la revisión judicial de una decisión de una agencia sea uno efectivo es imprescindible exigir que la misma esté fundamentada, aunque sea de forma sumaria".[18]

C.

Es una norma firmemente establecida en nuestro ordenamiento jurídico, que las adjudicaciones de subastas son objeto de revisión judicial de conformidad con los parámetros de revisión de una decisión final de una agencia administrativa.[19] Es por eso que una vez la junta involucrada emite una determinación, los tribunales no debemos intervenir, salvo que se demuestre que la misma se tomó de forma arbitraria, caprichosa o mediando fraude o mala fe, pues la junta, con su vasta experiencia y especialización, se encuentra, de ordinario, en mejor posición que el foro judicial para determinar el mejor licitador.[20]

Como en el caso de cualquier decisión de una agencia administrativa, la función revisora del tribunal tiene como propósito fundamental delimitar la discreción de los organismos gubernamentales y velar porque sus actuaciones sean conformes a la ley y estén dentro del marco del poder delegado.[21]

---

[17] 21 LPRA sec. 7081 (Énfasis nuestro).
[18] *L.P.C. & D.* v. *Autoridad de Carreteras y Transportación*, 149 DPR 869, 877 (1999) (citando a *RBR Const., S.E.* v. *A.C.*, 149 DPR 836 (1999)).
[19] *Autoridad de Carreteras y Transportación* v. *CD Builders, Inc.*, 177 DPR 398, 404-405 (2009).
[20] *A.E.E.* v. *Maxon*, 163 DPR 434, 444 (2004).
[21] *Misión Ind. P.R.* v. *J.P.*, 146 DPR 64, 129 (1998).

Así, pues, en ausencia de fraude, mala fe, o abuso de discreción, ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa. La cuestión debe decidirse a la luz del interés público, y ningún postor tiene un derecho adquirido en ninguna subasta.[22]

El peso de la prueba para demostrar la ocurrencia de fraude o abuso de discreción recae en que pretende impugnar, y si este no puede demostrar ausencia de factores racionales o razonables para la determinación de la agencia, entonces deberá demostrar un perjuicio o una violación a los estatutos o reglamentos aplicables.[23]

III.

En el presente caso, Skytec en su *primer* señalamiento, plantea que erró la Junta de Subastas en la adjudicación de la Subasta a favor de North Sight debido a que este no cumplió con los requisitos mandatorios y técnicos de los pliegos. Por otra parte, en su *segundo* señalamiento dispone que erró la Junta de Subastas al no adjudicarles la buena pro de la solicitud de la propuesta. Enfatizó que fue el único licitador que cumplió con todos los requisitos mandatorios y técnicos del pliego de subasta.

El Municipio, en defensa de la adjudicación impugnada, nos indica que, North Sight en efecto no incluyó en su propuesta los interfaces de los Municipios de Bayamón, Toa Baja y Toa Alta debido a que era innecesario hacerlo. Esto, ya que dichos Municipios son clientes previos de North Sight y cuentan con sistemas de interfaces en función. Aclaró que de ese modo se estarán conectando las frecuencias de cada uno de los Municipios mediante la conexión P-25-CSSI, requerida en la RFP. Asimismo, destacó que previo a que las compañías sometieran sus propuestas, se les ofreció la

---

[22] *Torres Prods.* v. *Junta Mun. Aguadilla,* 169 DPR 886, 898 (2007).
[23] *Empresas Toledo* v. *Junta,* 168 DPR 771, 785-786 (2006).

oportunidad a los proponentes de observar lo que había en cada uno de los Municipios y que dicha visita era compulsoria.

Por otra parte, en cuanto a la alegación de Skytec referente a la falta de detalle en la propuesta y literatura técnica y descriptiva sobre los equipos propuestos, el Municipio puntualizó que North Sight presentó en su propuesta la literatura de los equipos ofrecidos. Además, que North Sight incluyó en su propuesta información adicional y más específica del producto ofrecido.

De igual forma, referente a la alegación de Skytec acerca de interoperabilidad en la propuesta de North Sight, el Municipio dispuso que se les informó a los proponentes que cada municipio decide que frecuencia utilizar debido a que cada uno de estos conoce de sus necesidades. Así, pues, informó que a cada municipio le corresponde determinar si le es más conveniente el sistema de comunicaciones público o una compañía privada que le brinde dichos servicios.

Luego de evaluado la totalidad del expediente ante nos, coincidimos con el Municipio en que ambas propuestas cumplieron con los requisitos de la RFP.

El RFP del caso que nos ocupa dispone que la Junta de Subastas analizará, determinará y **adjudicará la "Buena Pro", al o a los licitadores responsivos cuyas propuestas representen el mejor valor para el Municipio de Bayamón,** y notificará la determinación final mediante Resolución o Aviso de Adjudicación.[24] Así, pues, la propuesta principal de North Sight estaba valorada en $58,000.00, mientras la propuesta principal de Skytec estaba valorada en $85,236.00. Por otro lado, la propuesta alterna de North Sight estaba valorada en $119,980.00, mientras que la propuesta alterna de Skytec, Inc., estaba valorada en $155,233.32. Por tanto,

---

[24] Pliego SP-2024-25-05, Capítulo 5.4, en la pág. 17.

la propuesta principal y la propuesta alterna de North Sight presentaban un mejor valor, por lo que, el Municipio actuó correctamente al adjudicarle la buena pro. A su vez, en la evaluación para la propuesta principal Skytec obtuvo una puntuación de 113 y North Sight una de 122. Por su parte, la evaluación de la propuesta alterna de Skytec, Inc., obtuvo un valor de 105, mientras la propuesta alterna de North Sight obtuvo un valor de 122. Esto, resultando en una puntuación mayor en ambas propuestas para North Sight.[25]

De otro lado, referente a las adjudicaciones de subastas, el inciso (a) del Artículo 10.006 de la Ley de Municipios Autónomos, dispone que estas se otorgarán al postor razonable más bajo, luego de tomar en consideración la habilidad de éste para realizar y cumplir el contrato, su responsabilidad económica, reputación comercial, la calidad del equipo que utilizará y cualquier otra condición que surja del pliego de subasta.[26]

Como es sabido, los procesos de subasta son procesos informales,[27] no obstante, los trámites posteriores a la adjudicación, la solicitud de reconsideración y revisión de la adjudicación de las subastas, son procedimientos formales, y conllevan requisitos rigurosos de notificación y exposición de los fundamentos de la actuación administrativa.[28] Así, pues, la notificación de adjudicación o la determinación final de la Junta, que se enviará a todos los licitadores que participaron en la subasta, debe incluir: nombre de los licitadores; síntesis de las propuestas sometidas; factores o criterios que se tomaron en cuenta para adjudicar la subasta y razones para no adjudicar a los licitadores perdidosos; y, el derecho a solicitar revisión judicial de la adjudicación o acuerdo

---

[25] *Véase* Apéndice 2 del Recurso, pág. 10.
[26] 21 LPRA sec. 4506.
[27] 3 LPRA sec. 2169; *Rafael Rosario & Assoc.* v. *Depto. Familia*, 157 DPR 306, 328-329 (2002).
[28] *RBR Const., S.E.* v. *A.C.*, 149 DPR 836, 854-855 (2000).

final, ante el Tribunal de Apelaciones, y el término para ello, que es dentro del término para impugnar la subasta ante el Tribunal de Apelaciones.[29]

De un examen detenido de la Resolución de adjudicación de la subasta notificado a las partes el 14 de marzo de 2025, surge que contiene los nombres de los licitadores que participaron, la evaluación de las propuestas expuesta en una tabla comparativa y el resumen económico de cada una. De igual forma, referida Resolución apercibe a los proponentes de la revisión judicial ante este Foro. Además, la Junta de Subastas especificó por escrito, que todas las ofertas cumplieron con "todas las condiciones y especificaciones requeridas".[30] Por lo que, el Municipio no detectó ningún defecto en las propuestas y sustentó su determinación en que North Sight presentó una propuesta con un mejor valor.

En este caso no encontramos en el expediente razones suficientes para justificar nuestra intervención con la adjudicación de la Subasta a North Sight, quien presentó una propuesta con mejor precio. Ninguna de las partes controvirtió la notificación de la Resolución de Adjudicación. Por el contrario, todas las partes confirmaron haber recibido la notificación el 14 de marzo de 2025. Skytec no presenta prueba que impugne la adjudicación hecha y sus argumentos, no persuade a este Tribunal para determinar que la buena pro fue adjudicada incorrectamente.

Evaluadas las razones señaladas por la Junta de Subastas del Municipio, así como el contenido del expediente del caso, entendemos que existen circunstancias suficientes y razonables para validar la adjudicación emitida. En vista de que todas las propuestas cumplieron con las especificaciones y requerimiento de

---

[29] Reglamento Núm. 8873 de 19 de diciembre de 2016, Sec. 13, en la págs. 118-119.
[30] *Véase* Apéndice 2 del Recurso, págs. 8-17.

la subasta, el factor determinante para adjudicar fue el mejor precio. Así quedó como mejor postor North Sight. Debido a ello, no tenemos duda de que el Municipio, al descartar la oferta de Skytec, actuó en protección del interés público.

En base a lo anterior, y de que no encontramos nada en el expediente que indique que el Municipio actuó de forma arbitraria, parcial o de forma ilegal, y en vista de la deferencia que le debemos, por su experiencia y especialización en este asunto, concluimos que no erró al adjudicarle la SP-2024-25-05 a North Sight.

IV.

Por los fundamentos antes expuestos, se declara *Sin Lugar* el Recurso de Revisión Administrativa y en su consecuencia, se *confirma* el dictamen recurrido.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones