EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Lydia Ramos Sánchez<br><br>Peticionaria<br><br>v.<br><br>Banco Popular de Puerto Rico h/n/c Popular Mortgage; Harold Hommy Rosario Medina, Vice Pres. Construcción; Luis R. Morales Solano, Arrow Developers Corp.; Luis R. Rivera Medina, LRRM Real Estate; María del C. de Quesada, María Miyares Realty; Mc P&G, Inc., h/n/c Terranova Realty Group, Pres. Joseph McCloskey; Molinas Doors & Windows Corp.; Yasmín Agosto, Ejecutiva Cuentas BPPR<br><br>Recurridos | Certiorari<br><br>2026 TSPR 63<br><br>218 DPR ___ |

Número del Caso: CC-2025-0140

Fecha: 10 de junio de 2026

Tribunal de Apelaciones:

    Panel II

Representante legal de la parte peticionaria:

    Lcdo. Manuel Izquierdo Encarnación

Representante legal de la parte recurrida:

    Lcda. Paola N. Ortiz Cordero

Materia: Sucesiones; Derecho Tributario – Distribución de las cargas contributivas de la sucesión antes de la liquidación del caudal; proceso que se debe utilizar para determinar el valor justo del mercado de un caudal de una sucesión al momento de la conmutación o desembolso.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Lydia Ramos Sánchez<br><br>Peticionaria<br><br>v.<br><br>Banco Popular de Puerto Rico h/n/c Popular Mortgage; Harold Hommy Rosario Medina, Vice Pres. Construcción; Luis R. Morales Solano, Arrow Developers Corp.; Luis R. Rivera Medina, LRRM Real Estate; María del C. de Quesada, María Miyares Realty; Mc P&G, Inc., h/n/c Terranova Realty Group, Pres. Joseph McCloskey; Molinas Doors & Windows Corp.; Yasmín Agosto, Ejecutiva Cuentas BPPR<br><br>Recurridos | CC-2025-140 | *Certiorari* |

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 10 de junio de 2026.

En el presente caso debemos ponderar si el Tribunal de Apelaciones actuó correctamente al desestimar un recurso de revisión judicial tras concluir que carecía de jurisdicción para revisar una *Resolución parcial* emitida por el Departamento de Asuntos del Consumidor (DACo o agencia) mediante la cual dicha agencia desestimó una *Querella* en cuanto a unas partes y continuó el proceso en contra de otras. **Contestamos en la negativa.**

En conformidad a la Ley de Procedimiento Administrativo Uniforme, *infra*, la referida determinación de DACo **sí** puede

ser revisada ante el foro apelativo intermedio. Asimismo, aprovechamos la oportunidad para pautar los contornos de la Regla 42.3 de Procedimiento Civil, *infra*, en su aplicación al ordenamiento procesal administrativo.

I

En noviembre de 2019, la Sra. Lydia Ramos Sánchez (peticionaria) presentó una *Querella* ante la agencia, en contra del Sr. Harold Rosario Medina (señor Rosario) h/n/c Banco Popular de Puerto Rico (Banco), la Sra. Yasmín Agosto (señora Agosto), en su carácter de oficiales del Banco (en conjunto, los recurridos),[1] entre otros,[2] por alegado incumplimiento de contrato y vicios de construcción. En síntesis, la peticionaria alegó que el 12 de febrero de 2019 realizó una primera inspección de la propiedad que había opcionado en noviembre de 2015 e identificó en una lista de tareas pendientes (*punch list)* varios asuntos de construcción que debían ser atendidos; que hizo una segunda inspección en abril de 2019 y dio seguimiento al *punch list*; que al momento del cierre hipotecario, en julio de 2019, notificó sobre los asuntos del *punch list* que no se habían resuelto y le indicaron que tendría treinta (30) días para reclamar. Añadió que, a los pocos días del cierre, comenzó

---

[1]    Al momento de la *Querella*, ambos fungían como oficiales del Banco Popular de Puerto Rico (Banco), específicamente el Sr. Harold Rosario Medina (señor Rosario) como Vicepresidente de Construcción y la Sra. Yasmín Agosto (señora Agosto) como Ejecutiva de Cuentas (en conjunto, los recurridos).

[2]    Los otros querellados son: Luis R. Molano Solano h/n/c Arrow Developers and Constructors, Corp., Joseph P. McCloskey Vázquez de MC P&G, Inc. h/n/c Terranova Realty Group, Luis R. Rivera Medina h/n/c LRRM Real Estate y María del Carmen de Quesada h/n/c María Miyares Realty.

el proceso para reclamar la garantía, ya que la propiedad tenía problemas de electricidad, filtración, grietas, acumulación de agua, humedad, entre otros. Indicó, además, que había notificado sobre estas situaciones a los recurridos y a todos los demás querellados, pero no corrigieron las mismas. Más adelante, en febrero de 2020, la peticionaria enmendó la *Querella* para incluir al Banco como parte querellada.[3]

Así las cosas, el 6 de febrero de 2020, los recurridos presentaron una *Moción solicitando desestimación sumaria de la Querella*. En síntesis, adujeron que en la *Querella* no surgía ninguna alegación de hechos dirigida a ellos, así como destacaron que no existía ninguna relación contractual entre ellos y la peticionaria.[4] Asimismo, plantearon que de los documentos incluidos en la *Querella* surgía de forma inequívoca que el Banco solamente otorgó un préstamo al

---

[3]    Referente a esto, el Departamento de Asuntos del Consumidor (DACo o agencia) emitió una *Notificación de Enmienda* el 6 de marzo de 2020.

[4]    Al respecto, los recurridos indicaron lo siguiente:

"Reiteramos que en el caso que nos atañe, las alegaciones presentadas por la Querellante no presentan ni un solo hecho que tendiera a establecer que los Oficiales del BPPR h/n/c BPPR hayan contratado a subcontratistas para realizar los trabajos correspondientes a la casa de la Querellante, y/o trabajar junto a Arrow Developers en la obra, o que participaron en el diseño de la residencia, o que ejercieron labores de construcción, o hayan asumido la responsabilidad de certificar [la] calidad de la obra.

Aun asumiendo TODOS los hechos alegados en la Querella, de los mismos, no existiría una reclamación que justifique la concesión de un remedio por los Oficiales del BPPR h/n/c BPPR en el caso de autos. Ninguno de los hechos presentados, están relacionados a actuaciones u omisiones de los Oficiales del BPPR h/n/c BPPR y las reclamaciones de la Sra. Ramos son dirigidas hacia Arrow Developers y los contratistas que participaron en el proyecto que al día de hoy no le han cumplido con el reclamo de las garantías". *Moción solicitando desestimación sumaria de la Querella*, Apéndice del *certiorari*, pág. 82.

desarrollador co-querellado (Arrow Developers and Constructors, Corp.) para el financiamiento de las obras de construcción del proyecto residencial Bosque de Santa María en Trujillo Alto, lugar donde la peticionaria compró una propiedad residencial. Ante esto, solicitaron la desestimación de la *Querella* por falta de jurisdicción y por no aducir hechos constitutivos de una reclamación que justificara la concesión de un remedio.

Por su parte, el 13 de marzo de 2020, el Banco también presentó una moción de desestimación sumaria, en la cual argumentó que tanto en la *Querella* como en la enmienda no se incluyeron alegaciones en su contra. De igual forma, reiteró los argumentos previamente presentados por los recurridos a favor de la desestimación de la *Querella*.

Más adelante, el 15 de julio de 2020, el Banco presentó una moción en la que reiteró su petición de desestimación sumaria y, en consecuencia, solicitó que se desestimara la *Querella* en su contra. En esa misma fecha, los recurridos comparecieron para reiterar lo expuesto en su moción del 6 de febrero de 2020 y solicitaron que la misma se declarara con lugar y se procediera con la desestimación de la *Querella* presentada en su contra.

Así las cosas, el 15 de septiembre de 2020, la peticionaria presentó su respuesta a las mociones instadas por los recurridos y el Banco. En síntesis, adujo que el Banco participó en "la promoción, construcción, venta e intervención, incluyendo y no limitado, a la toma de decisiones" sobre el proyecto residencial. Asimismo, planteó

que su *Querella* sí establecía los remedios solicitados. Ante esto, solicitó al DACo que no procediera con la desestimación sumaria de la *Querella*.

Entre los años 2020 al 2022, las partes presentaron escritos en los que reiteraron sus posturas y solicitaron que se resolvieran sus respectivas peticiones de desestimación. Así las cosas, el 1 de septiembre de 2022, la peticionaria solicitó a la agencia que pautara una fecha para celebrar la vista administrativa del caso.

Según surge del expediente, finalmente el 9 de julio de 2024, la agencia celebró una conferencia con antelación a vista. Allí, el Banco reiteró que en la *Querella* no se expusieron alegaciones en su contra. Ante esto, la peticionaria solicitó un término para plantear su posición sobre lo alegado por la institución financiera y así fue concedido por la agencia. En vista de ello, el 29 de julio de 2024, la peticionaria presentó su *Moción en cumplimiento de orden*, en la que reiteró sus argumentos previos y su postura en torno a que procedía denegar la moción de desestimación presentada por el Banco. Así pues, el 19 de agosto de 2024, el Banco presentó su moción en cumplimiento de orden, en la que solicitó que se diera por sometida su petición de desestimación.

Luego de evaluar las posturas de las partes, el 4 de septiembre de 2024, el DACo emitió una *Resolución parcial* mediante la cual declaró *Ha Lugar* la moción de desestimación presentada por el Banco. En consecuencia, desestimó la *Querella* en cuanto al Banco y los recurridos (señor Rosario

y señora Agosto).[5] En resumen, concluyó que ninguna de las alegaciones de la peticionaria demostraba que el Banco tuviese un rol activo en el proyecto residencial en cuestión, esto más allá de ser acreedor del préstamo para el desarrollo y construcción del mencionado proyecto. Así pues, determinó que ni el Banco ni los recurridos respondían por los vicios ocultos en la construcción del referido proyecto. Como parte de su determinación, la agencia incluyó determinaciones de hechos, conclusiones de derecho que fundamentan su adjudicación, apercibimiento sobre el derecho a reconsideración y revisión judicial, firma del funcionario autorizado por ley, constancia de la notificación a las partes y a los abogados, así como archivo en autos de copia de la decisión.

Así pues, el 18 de octubre de 2024, la peticionaria presentó ante la agencia una *Moción de reconsideración*, la cual fue declarada *No Ha Lugar* el 21 de octubre de 2024.

Inconforme con la decisión de la agencia, el 20 de noviembre de 2024, la peticionaria presentó una *Solicitud de revisión judicial* ante el Tribunal de Apelaciones. En resumen, expuso que el DACo erró al desestimar de forma arbitraria la *Querella* presentada en contra del Banco, sin celebrar vista o recibir prueba. Más adelante, el 20 de diciembre de 2024, el Banco presentó su Alegato en oposición al recurso.

---

[5] El archivo en autos de copia de la *Resolución parcial* fue el 5 de septiembre de 2024 y notificada a las partes el 9 de septiembre de 2024.

Tras examinar los argumentos de las partes, el 9 de enero de 2025, el foro apelativo intermedio emitió una *Sentencia* mediante la cual desestimó el recurso por falta de jurisdicción.[6] Específicamente, concluyó que debido a que la determinación objeto de revisión era una parcial y no final, ésta no era susceptible de ser revisada. A su vez, determinó que la *Resolución parcial* emitida por la agencia "no [cumplía] con las excepciones permitidas por el ordenamiento jurídico vigente, las cuales nos facultan de prescindir de acatarnos a la doctrina de agotamiento de remedios administrativos".[7] Al respecto, el Tribunal de Apelaciones resolvió lo siguiente:

> Establecido lo anterior, es un hecho indubitado que la Resolución [p]arcial ante nuestra consideración no es susceptible de revisión y no dispuso de la totalidad del pleito. En vista de ello, no tenemos otra alternativa que desestimar el recurso de título. Sin embargo, lo anterior en nada limita a que, una vez el DACo emita una *Resolución* que disponga de la totalidad del pleito, la parte que así lo estime, pueda solicitar los remedios que provee nuestro ordenamiento jurídico.[8]

Así las cosas, el 29 de enero de 2025, la peticionaria presentó una *Moción de reconsideración*, la cual fue declarada *No Ha Lugar* por el foro apelativo intermedio el 6 de febrero de 2025.[9]

---

[6]   El archivo en autos de copia de la *Sentencia* fue el 14 de enero de 2025.

[7]   *Sentencia*, *Petición de certiorari*, pág. 12.

[8]   Íd., pág. 13.

[9]   El archivo en autos de copia de la *Resolución* fue el 7 de febrero de 2025.

En desacuerdo con la determinación del Tribunal de Apelaciones, el 10 de marzo de 2025, la peticionaria recurrió ante este Foro mediante una *Petición de certiorari*. Así las cosas, el 2 de mayo de 2025 expedimos el auto solicitado limitado al primer error señalado, el cual esboza lo siguiente:

> Erró el Tribunal de Apelaciones al declarar que no tenía jurisdicción para atender la [s]olicitud de [r]evisión [j]udicial presentada por la [p]eticionaria.

El 12 de junio de 2025, la peticionaria solicitó una prórroga para la presentación de su Alegato, lo que fue concedido mediante *Resolución* del 17 de junio de 2025. Así, el 23 de junio de 2025 la peticionaria presentó su Alegato y el Banco presentó el suyo el 23 de julio de 2025. En vista de lo anterior, el caso quedó sometido para la adjudicación en sus méritos el 29 de julio de 2025.

Con el beneficio de la posición de ambas partes, procedemos a examinar el derecho aplicable.

## II

### A. La revisión judicial sobre las decisiones emitidas por las agencias administrativas

La revisión judicial de las determinaciones administrativas responde principalmente al objetivo de delimitar la discreción de las agencias y así procurar que éstas ejerzan sus funciones de acuerdo con la ley. OAM v. Abarca Health, 2025 TSPR 23, 2015 DPR ___ (2025); Simpson, Passalacqua v. Quirós, Betances, 214 DPR 370, 377 (2024); Mun. de San Juan v. J.C.A., 149 DPR 263, 279 (1999). Véanse, además: Hernández Feliciano v. Mun. Quebradillas, 211 DPR 99,

113-114 (2023); <u>OEG v. Martínez Giraud</u>, 210 DPR 79, 88 (2022). En tal sentido, el profesor Demetrio Fernández Quiñones expone que el propósito principal de ello es "asegurarse de que las agencias actúan dentro del marco del poder delegado y consistente con la política legislativa". D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3.ª ed., Bogotá, Ed. Forum, 2013, pág. 669.

**1. Ley de la Judicatura de Puerto Rico de 2003**

El Art. 4.006(c) de la Ley de la Judicatura de Puerto Rico de 2003, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24y, establece la competencia del Tribunal de Apelaciones para la revisión de las decisiones y órdenes de las agencias administrativas. En lo pertinente, el referido artículo indica lo siguiente:

> El Tribunal de Apelaciones conocerá de los siguientes asuntos:
>
> .   .   .   .   .   .   .   .
>
> (c) Mediante recurso de revisión judicial, que se acogerá como cuestión de derecho, de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. […] El procedimiento a seguir será de acuerdo con lo establecido por las secs. 2101 *et seq.* del Título 3, conocidas como la "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico". 4 LPRA sec. 24y(c).[10]

En referencia a la mencionada disposición, el profesor Javier A. Echevarría Vargas nos comenta que el recurso de

---

[10]  Nótese que el mencionado cuerpo legal fue derogado y sustituido por la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.*

revisión judicial tendrá que ser atendido como cuestión de derecho por el foro apelativo intermedio, lo que significa que no es un recurso de carácter discrecional, por cuanto dicho tribunal viene obligado a considerarlo en sus méritos. J. A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 4.ª ed. rev., San Juan, Ed. SITUM, 2017, pág. 323.

Por su parte, en lo aquí atinente, la Regla 56 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, establece que esta disposición "gobernará el trámite de las revisiones de todos los recursos instados ante el Tribunal de Apelaciones para la revisión de las decisiones, los reglamentos, las órdenes, las resoluciones y las providencias finales dictadas por organismos o agencias administrativas o por sus funcionarios o funcionarias, ya sea en su función adjudicativa o cuasi legislativa, conforme lo dispuesto en ley".

## 2. **Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU)**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq*., constituye el cuerpo legal que regula la revisión judicial de las decisiones administrativas.[11] Sobre el particular, el profesor Fernández

---

[11] Valga mencionar que, como norma general, las decisiones de las agencias administrativas serán examinadas por el Tribunal de Apelaciones a través del recurso de revisión judicial establecido en la LPAU. No obstante, también existen leyes especiales que pueden establecer procesos de revisión judicial siguiendo el rigor dispuesto en dichos estatutos, como por ejemplo la adopción de términos más cortos para la presentación de los recursos tal como ocurre con el Código Electoral. Véase J. A.

Quiñones expresa que la LPAU "rige, controla y define el ámbito de la revisión judicial". Fernández Quiñones, *op. cit.*, pág. 687.

A los fines de enmarcar la estructura procesal de la revisión judicial, la Sección 4.1 de la LPAU, *supra*, 3 LPRA sec. 9671, expone que las disposiciones de dicha ley aplicarán a "aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos que serán revisadas por el Tribunal de Apelaciones mediante recurso de revisión". En conformidad a esto, la Sección 4.6 de la Ley LPAU, *supra*, 3 LPRA sec. 9676, dispone, en lo pertinente, que el foro apelativo intermedio "revisará como cuestión de derecho las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas".

En particular, este Tribunal ha manifestado que la competencia del Tribunal de Apelaciones para efectuar la revisión de las decisiones administrativas, en su función adjudicativa, salvo se disponga lo contrario en una ley posterior, se rige por la Sección 4.2 de la LPAU, *supra*, 3 LPRA sec. 9672. OAM v. Abarca Health, *supra*; Fuentes Bonilla v. ELA *et al.*, 200 DPR 364, 380 (2018). La referida sección establece el momento en que procede la revisión ante el Tribunal de Apelaciones y quién está legitimado para acudir a dicho foro judicial. Específicamente, la Sección 4.2 de la LPAU, *supra*, dispone que:

---

Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 4.ª ed. rev., San Juan, Ed. SITUM, 2017, pág. 306.

Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 9655 de este título cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. […]

.   .   .   .   .   .   .   .

Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia.

La revisión judicial aquí dispuesta será el recurso exclusivo para revisar los méritos de una decisión administrativa, sea esta de naturaleza adjudicativa o de naturaleza informal emitida al amparo de este capítulo.

## 3. Definiciones en la LPAU

En lo pertinente, la Sección 1.3 de la LPAU, *supra*, 3 LPRA sec. 9603, establece las definiciones siguientes:

(b) Adjudicación – Significa el pronunciamiento mediante el cual una agencia determina los derechos, obligaciones o privilegios que correspondan a una parte.

.   .   .   .   .   .   .   .

(g) Orden o resolución — Significa cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas, o que imponga penalidades o sanciones administrativas excluyendo órdenes ejecutivas emitidas por el Gobernador.

(h) Orden o resolución parcial — Significa la acción agencial que adjudique algún derecho u obligación que no ponga fin a la controversia total sino a un aspecto específico de la misma.

(i) Orden interlocutoria — Significa aquella acción de la agencia en un procedimiento adjudicativo que disponga de algún asunto meramente procesal.

.     .     .     .     .     .     .     .

(k) Parte - Significa toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento.

La "adjudicación" se trata del ejercicio de la función judicial o cuasi-judicial delegada a la agencia. Según descrito en la ley, la "adjudicación" constituye el pronunciamiento mediante el cual la agencia determina los derechos, obligaciones o privilegios que le asisten a determinada parte. Fernández Quiñones, *op. cit.*, pág. 30.

Por otra parte, de una lectura de la LPAU vemos que se define el término "orden o resolución" de manera general, mientras se definen de forma específica dos (2) tipos de órdenes o resoluciones: las parciales y las interlocutorias. J. Exam Tec. Med. v. Elías *et al.*, 144 DPR 483, 489 (1997). Sin embargo, en la LPAU no se define lo que constituye una "orden o resolución final". Íd.; Simpson, Passalacqua v. Quirós, Betances, *supra*, pág. 378.

En cuanto al término "orden o resolución" se dispone que es cualquier decisión o acción de la agencia de aplicación particular que adjudica derechos u obligaciones de una o más

personas específicas, o mediante la cual se impone alguna penalidad o sanción administrativa, a excepción de órdenes ejecutivas emitidas por el Gobernador. Mientras, se define que una "orden o resolución parcial" es una acción de la agencia que adjudica algún derecho u obligación que no pone punto final a la controversia total, sino a un aspecto específico de ésta. En relación a la "orden interlocutoria", ésta es aquella acción de la agencia mediante la cual se dispone de algún asunto meramente procesal en un procedimiento adjudicativo. Véase Comisionado Seguros v. Universal, 167 DPR 21, 28 (2006).

Como vemos, las referidas definiciones dispuestas en la Sección 1.3 de la LPAU, *supra*, "no delimitan expresamente lo que constituye una orden o resolución final". Comisionado Seguros v. Universal, *supra*, pág. 29. Sin embargo, recientemente en Simpson, Passalacqua v. Quirós, Betances, *supra*, pág. 378, citando a J. Exam Tec. Med. v. Elías *et al*., *supra*, pág. 490, expresamos que una orden o resolución final constituye "[la decisión] que [pone] fin al caso ante la agencia y que [tiene] efectos sustanciales sobre las partes". Sobre esto, añadimos lo siguiente:

> [e]sta determinación tiene las características de una sentencia judicial, pues da por terminada la cuestión litigiosa y es apelable. En ocasiones más recientes reiteramos que una orden o resolución final resuelve todas las controversias pendientes ante la agencia y supone la culminación definitiva del proceso administrativo. Simpson, Passalacqua v. Quirós, Betances, *supra*, pág. 378.

De igual forma, este Tribunal ha expresado que a pesar de que la LPAU no define el término "orden o resolución final",

la ley describe lo que se tiene que incluir en ésta. Según la Sección 3.14 de la LPAU, *supra*, 3 LPRA sec. 9654, se requiere incluir determinaciones de hechos si éstas no se han renunciado, conclusiones de derecho que fundamentan la adjudicación, advertencia sobre la disponibilidad para solicitar reconsideración o revisión judicial, según sea el caso, así como la firma del jefe de la agencia o de cualquier otro funcionario autorizado por ley. Véase, además, A.R.Pe. v. Coordinadora, 165 DPR 850, 867 (2005).

Por último, en cuanto al término "parte", hemos expresado que es aquella que participa activamente en un proceso administrativo adjudicativo, y cuyos derechos y obligaciones puedan verse afectados por la actuación o inacción de la agencia. J.P. v. Frente Unido I, 165 DPR 445, 464 (2005); Lugo Rodríguez v. J.P., 150 DPR 29, 43 (2000).

**4. El requisito de finalidad de la acción administrativa**

Según citada previamente, la Sección 4.2 de la LPAU, *supra*, dispone, en lo pertinente, que una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones.

Así pues, la mencionada disposición limita la revisión a las decisiones de las agencias administrativas que cumplan con estos requisitos: (1) que se trate de órdenes o resoluciones finales, y (2) que la parte que solicita la revisión haya agotado todos los remedios provistos por la

agencia administrativa. ORIL v. El Farmer, Inc., 204 DPR 229, 239 (2020); AAA v. UIA, 200 DPR 903, 912 (2018); Fuentes Bonilla v. ELA *et al.*, *supra*, pág. 381. Cónsono con ello, hemos manifestado que la revisión judicial, de ordinario, se realiza una vez se concluyen los trámites administrativos y se adjudican todas las controversias pendientes ante la agencia. Fonte Elizondo v. F & R Const., 196 DPR 353, 358 (2016); J. Exam Tec. Med. v. Elías *et al.*, *supra*, pág. 490.

Planteada la norma general dispuesta en la referida Sección 4.2 de la LPAU, *supra*, es importante señalar que este Foro ha expresado que "el requisito de finalidad de la acción [administrativa] y la doctrina de agotamiento de remedios administrativos generalmente se benefician de las mismas excepciones pues, aunque son conceptos diferentes, tienen un alcance análogo". OAM v. Abarca Health, *supra*. Véanse, además: Procuradora Paciente v. MCS, 163 DPR 21, 38 (2004); ORIL v. El Farmer, Inc., *supra*, pág. 239; AAA v. UIA, *supra*, pág. 914; J. Exam Tec. Med. v. Elías *et al.*, *supra*, pág. 491. Esto se debe a que ambas normas doctrinales permiten que los tribunales discrecionalmente se abstengan de revisar una actuación de una agencia gubernamental hasta que la agencia logre alcanzar una determinación que refleje su posición final. ORIL v. El Farmer, Inc., *supra*, pág. 239; J. Exam Tec. Med. v. Elías *et al.*, *supra*, pág. 491.

De igual manera, en el ámbito federal -de donde se origina nuestra legislación sobre el derecho administrativo- se dispuso que la doctrina sobre agotamiento de remedios y el requisito de que solamente las resoluciones finales son

revisables se sustentan en los mismos fundamentos. ORIL v. El Farmer, Inc., *supra*, págs. 239-240; Procuradora Paciente v. MCS, *supra*, pág. 38 esc. 10.

En línea con ello, y según lo dispuesto en la Sección 4.3 de la LPAU, 3 LPRA sec. 9673, este Tribunal ha indicado que se puede preterir el trámite administrativo cuando: (1) el remedio es inadecuado; (2) exigir su agotamiento ocasionaría un daño irreparable y en el balance de intereses no se justifique agotar los remedios; (3) se aduce una violación sustancial de derechos constitucionales; (4) sería inútil agotar los remedios por la dilación excesiva en el proceso; (5) hay un caso claro de falta de jurisdicción, y (6) el asunto es estrictamente de derecho y no requiere la pericia administrativa. OAM v. Abarca Health, *supra*.

Relacionado a este asunto, señalamos que mediante la jurisprudencia se ha ido dando forma a las excepciones dispuestas en la Sección 4.3 de la LPAU, *supra*, así como a través de enmiendas a la legislación. AAA v. UIA, *supra*, pág. 918. Por ejemplo, en ORIL v. El Farmer, Inc., *supra*, este Foro concluyó que una orden de descalificación de abogado emitida por una agencia administrativa es revisable antes de que se emita un dictamen final según los méritos del caso. Allí expresamos que "esperar hasta la determinación final de la agencia administrativa sería absurdo, por lo que amerita preterir el cauce administrativo". ORIL v. El Farmer, Inc., *supra*, pág. 247.

Asimismo, en Simpson, Passalacqua v. Quirós, Betances, *supra*, concluimos que una denegatoria de una solicitud de

intervención emitida por la agencia administrativa es revisable de forma interlocutoria ante el foro apelativo intermedio a pesar de no haber concluido el proceso de adjudicación formal. Al respecto, indicamos que "no podemos obviar que una denegatoria de intervención, si bien no es la resolución que da por culminado el trámite ante la agencia, adjudica de manera definitiva el derecho del solicitante a ser parte del procedimiento administrativo". Íd., pág. 385.

Más recientemente, en OAM v. Abarca Health, *supra*, resolvimos que la denegatoria de una solicitud de desestimación basada en la defensa de prescripción de la acción administrativa es revisable judicialmente de forma interlocutoria, esto sin esperar al dictamen final de la agencia administrativa. En particular, señalamos que "por sus implicaciones, la defensa de prescripción, debidamente formulada y bien fundada, debe ser atendida como cuestión previa a la de fondo". Íd. De igual forma, añadimos que al ser este asunto una controversia de derecho, no se requería la pericia administrativa. Íd.

**B. Las definiciones en el Reglamento de Asuntos Adjudicativos del DACo**

La Regla 4, inciso (p), del Reglamento de Procedimientos Adjudicativos del DACo, Reglamento Núm. 8034 de 14 de junio de 2011 define "orden o resolución" como el "[p]ronunciamiento o acción de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas, o que imponga un curso de acción, de cesar y desistir, de mostrar causa, multas, penalidades o sanciones

administrativas". Mientras, el inciso (o) de la mencionada Regla 4 define "orden interlocutoria" como la "[a]cción que disponga de algún asunto que no finalice la querella". Por último, el inciso (x) de la referida Regla 4 define "resolución parcial" como la "[a]cción que determine o adjudica derechos y obligaciones, sin finalizar la totalidad de la controversia".

Por su parte, la Regla 26 establece lo relacionado con las resoluciones y órdenes. En particular, la Regla 26.1 dispone lo siguiente:

> La resolución de la querella en sus méritos contendrá una relación de la determinación de hechos probados, la cual se ajustará y tendrá apoyo en el expediente del procedimiento, conclusiones de derecho, y dispondrá lo que en Derecho proceda para su ejecución mediante una orden e incluirá los apercibimientos para solicitar revisión judicial.

**C. El ordenamiento procesal administrativo y las Reglas de Procedimiento Civil**

La LPAU creó un cuerpo de reglas mínimas que rige en las agencias administrativas cobijadas por dicho estatuto. Fonte Elizondo v. F & R Const., *supra*, pág. 358. Precisamente, como hemos señalado, el propósito de la LPAU fue proveer uniformidad al proceso decisorio de la administración pública. Rafael Rosario & Assoc. v. Depto. Familia, 157 DPR 306, 325 (2002). De esa forma, el estatuto sistematiza y crea un cuerpo uniforme de reglas que toda agencia deberá observar al formular reglas y reglamentos que definan los derechos y deberes legales de una clase particular de personas, así como también gobernará las determinaciones de la agencia en los procesos adjudicativos al emitir una orden

o resolución que defina los derechos y deberes legales de personas específicas. Íd., págs. 325-326.

Como norma general, las Reglas de Procedimiento Civil no aplican de forma automática en los procedimientos administrativos. Moreno Lorenzo y otros v. Depto. Fam., 207 DPR 833, 840 (2021); SLG Saldaña-Saldaña v. Junta, 201 DPR 615, 623 (2018); Flores Concepción v. Taíno Motors, 168 DPR 504, 518 (2006). Esto responde a la necesidad de que los organismos administrativos funcionen sin la inflexibilidad que por lo general caracteriza a los tribunales. SLG Saldaña-Saldaña v. Junta, supra, pág. 623. No obstante, hemos aplicado dichas reglas a estos procedimientos siempre que éstas fueran compatibles con el proceso administrativo y propicien una solución justa, rápida y económica. Moreno Lorenzo y otros v. Depto. Fam., supra, pág. 840; Flores Concepción v. Taíno Motors, supra, págs. 518-519; Florenciani v. Retiro, 162 DPR 365, 370-371 (2004).

Por otro lado, también hemos indicado que no procede la aplicación de las mencionadas reglas procesales cuando la extensión de éstas "acarrea trabas que obstaculizan la flexibilidad, agilidad o sencillez que debe tener el proceso administrativo". Moreno Lorenzo y otros v. Depto. Fam., supra, pág. 840.

Hemos reiterado que nada impide que en casos apropiados se adopten normas de las Reglas de Procedimiento Civil con el objetivo de guiar el curso del proceso administrativo, cuando aquellos principios fomenten la solución justa. Romero

Santiago v. F.S.E., 125 DPR 596, 600 (1990) citando a Berríos

v. Comisión de Minería, 102 DPR 228, 229-230 (1974).[12] Con

relación a este tema, el profesor Fernández Quiñones ha

señalado lo siguiente:

> La compatibilidad es el criterio usado por el Tribunal Supremo para aplicar las Reglas de Procedimiento Civil al procedimiento de adjudicación del ámbito administrativo. La compatibilidad va unida a que se propicie la solución justa, rápida y económica. Son dos, pues, los componentes que se examinan para llevar a cabo ese acto, consistente en la aplicación de la norma procesal civil. Ellos son que la norma pueda unirse y concurrir con el procedimiento administrativo y que la solución esté inspirada en los valores fundamentales de justicia proclamados en la Regla 1 de las de Procedimiento Civil. Lo fundamental es que el propósito primordial de las reglas es su utilidad para viabilizar la consecución del derecho sustantivo de las partes. Las reglas tienen que servir ese propósito y que se resuelvan las controversias de esa manera. La agilidad del proceso es lo que se persigue. El requisito es, sin lugar a dudas, necesario que se manifieste en la dimensión pragmática del ordenamiento procesal. (Citas omitidas). Fernández Quiñones, *op. cit.*, pág. 818.

**D. La Regla 42.3 de Procedimiento Civil: sentencias sobre reclamaciones o partes múltiples**

La Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V,

permite que en los casos en que se atiendan reclamaciones o

partes múltiples, el tribunal dicte sentencia en torno a una

u otra de las reclamaciones sin necesidad de esperar a que

---

[12] Vale mencionar que en Romero Santiago v. F.S.E., 125 DPR 596, 600-601 esc. 5 (1990), este Tribunal alude a que en la anterior Ley de Procedimiento Administrativo Uniforme de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988, 3 LPRA ant. sec. 2101 *et seq*. se integraron varios principios esbozados en las Reglas de Procedimiento Civil de 1979. Entre éstos, la adopción del procedimiento de conferencia con antelación a la vista, los mecanismos de descubrimiento de prueba, los procedimientos de notificación de vista, los procedimientos en rebeldía y los procedimientos de reconsideración.

esté en condición de dictar sentencia sobre todas las reclamaciones. R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis de Puerto Rico, Inc., 2017, pág. 424. El propósito de esta regla es evitar la posible injusticia que causaría una dilación en emitir la sentencia respecto a una reclamación o alguna parte si se esperara hasta la adjudicación total en torno a todas las reclamaciones o todas las partes. Íd.

En particular, la Regla 42.3 de Procedimiento Civil, *supra*, dispone lo siguiente:

> Cuando un pleito comprenda más de una reclamación, ya sea mediante demanda, reconvención, demanda contra coparte o demanda contra tercero, o figuren en él partes múltiples, el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya expresamente que no existe razón para posponer que se dicte sentencia sobre tales reclamaciones hasta la resolución total del pleito, y siempre que ordene expresamente que se registre la sentencia.
>
> Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a las reclamaciones o los derechos y las obligaciones en ella adjudicada, y una vez sea registrada y se archive en autos copia de su notificación, comenzarán a transcurrir en lo que a ella respecta los términos dispuestos en las Reglas 43.1, 47, 48 y 52.2.

Así pues, cuando el tribunal dicte sentencia para adjudicar alguna de las reclamaciones o en cuanto a alguna parte en el litigio, dicho foro deberá: (1) concluir expresamente que no existe razón para posponer dictar sentencia hasta la resolución final del pleito, y (2) ordenar expresamente que se registre la sentencia. Johnson & Johnson v. Mun. de San Juan, 172 DPR 840, 849 (2007). De esa manera,

el tribunal le imparte carácter de finalidad a la sentencia parcial que se dicte. R. Hernández Colón, *op. cit.*, pág. 424.

Luego de exponer el marco jurídico esbozado, procedemos a atender el asunto ante nuestra consideración. Según adelantamos, corresponde exponer por qué el Tribunal de Apelaciones erró al desestimar el recurso de revisión judicial presentado por la peticionaria bajo el fundamento de falta de jurisdicción.

## III

La peticionaria plantea que el dictamen administrativo emitido por el DACo mediante el cual se desestimó la *Querella* en contra del Banco y los recurridos es revisable por el Tribunal de Apelaciones, ya que puso fin a todas las controversias que podían ser adjudicadas entre esas partes. En particular, el foro apelativo intermedio concluyó que carecía de jurisdicción para atender el recurso de revisión judicial presentado por la peticionaria, debido a que la determinación objeto de revisión era una parcial y no una que dispusiera de la totalidad del caso. **Al así resolver, erró el foro apelativo intermedio.** Veamos.

De ordinario, la revisión judicial procede una vez se concluyen los trámites administrativos y se adjudican todas las controversias pendientes ante la agencia. <u>Fonte Elizondo v. F & R Const.</u>, *supra*, pág. 358. Tomando en cuenta esta realidad de nuestro ordenamiento procesal administrativo, en su Alegato, la peticionaria argumenta que el proceso administrativo no descarta la posibilidad de que existan

varias partes querelladas y alude que el esquema estatutario de la LPAU viabiliza esa posibilidad. Según explica, ante ese escenario, cada parte querellada podría esbozar sus respectivas alegaciones y defensas, y con ello surgiría la posibilidad de que la agencia, incluso, decida desestimar parcialmente el pleito en cuanto a una o varias partes y seguir el proceso en contra de las demás partes querelladas.

No obstante, la peticionaria reconoce que la LPAU no contempla lo relativo a que la agencia administrativa pueda emitir un dictamen parcial que ponga fin a todas las controversias sobre una o varias partes y continúe el proceso en cuanto a otras. Ante esto, la peticionaria nos invita a que adoptemos lo dispuesto en la Regla 42.3 de Procedimiento Civil, *supra*, relativo a las sentencias sobre reclamaciones o partes múltiples y lo apliquemos a los procedimientos administrativos. Al respecto, la peticionaria enfatiza que dicha regla procesal civil establece claramente que la adjudicación final respecto a una parte hace oportuna la jurisdicción apelativa. Es decir, nos sugiere que la decisión administrativa esté sujeta a la revisión judicial sin tener que esperar a la adjudicación total de la querella en la agencia administrativa.

La teoría de la peticionaria nos convence, por lo cual la acogemos en nuestro ordenamiento procesal administrativo. Claro está, al aplicar los contornos de la Regla 42.3 de Procedimiento Civil, *supra*, al ámbito administrativo, somos conscientes de que en aquella se alude al término o concepto "sentencia", en particular una sentencia parcial.

Sin embargo, en lo que se refiere al entorno administrativo, se utilizarán los términos resolución u orden, pues como bien expone el profesor Fernández Quiñones, las agencias no dictan sentencias. Fernández Quiñones, *op. cit.*, pág. 831.

Resolvemos que, al igual que en otros casos en los que hemos acogido previamente Reglas de Procedimiento Civil en el trámite administrativo, aplicar la Regla 42.3 de Procedimiento Civil, *supra*, a la situación de hechos de este caso no es incompatible con el proceso administrativo. Como mencionamos, ello procede cuando las Reglas de Procedimiento Civil sean compatibles con el proceso administrativo y propicien una solución justa, rápida y económica. Flores Concepción v. Taíno Motors, *supra*, pág. 521. Ciertamente, la adopción de la mencionada regla fomenta dichos objetivos en el presente caso.

Al así acoger lo dispuesto en la Regla 42.3 de Procedimiento Civil, *supra*, como parte del ordenamiento procesal administrativo, resaltamos lo expresado por el profesor Fernández Quiñones referente a la integración de normas procesales de carácter civil en el procedimiento administrativo. Por su relevancia, lo citamos *in extenso*:

> Es de notar que el principio de la uniformidad es un ingrediente sustancial determinante en el reconocimiento de la aplicación y vigencia de una regla procesal civil en el ámbito del procedimiento administrativo. Lo distintivo del procedimiento administrativo no [se] desnaturaliza por actuar de esa manera. La salud del ordenamiento se fortalece, habida cuenta de que se nutre el derecho procesal administrativo. Fernández Quiñones, *op. cit.*, pág. 836.

Así pues, la determinación administrativa aquí en cuestión tiene el efecto de finalizar la controversia en cuanto al Banco y los recurridos.[13] Es decir, la referida determinación del DACo es final con respecto a las partes contra las cuales se concedió la desestimación, en vista de que adjudica de manera definitiva derechos y obligaciones de personas específicas. Claro está, la *Querella* continuará contra los demás querellados en el proceso administrativo.[14]

En vista de todo lo anterior, concluimos que el Tribunal de Apelaciones tenía jurisdicción para atender el recurso de revisión judicial presentado por la peticionaria. Esto se debe a que la decisión administrativa en cuestión constituye una determinación parcial con finalidad para esas partes y, por ello, sujeta a revisión judicial según lo aquí discutido.

### IV

Por los fundamentos antes expresados, revocamos la *Sentencia* emitida el 9 de enero de 2025 por el Tribunal de Apelaciones. En consecuencia, devolvemos el caso a ese foro para que atienda en sus méritos el recurso de revisión judicial presentado por la peticionaria, en conformidad con lo aquí resuelto.

Se dictará Sentencia en conformidad.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

---

[13] Según hemos expresado, lo que determina si una orden o resolución es final o interlocutoria no es su nombre, sino los elementos que la componen. A.R.Pe. v. Coordinadora, 165 DPR 850, 870 (2005).

[14] Véase nota al calce número 2 de esta Opinión.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Lydia Ramos Sánchez<br><br>Peticionaria<br><br>v.<br><br>Banco Popular de Puerto Rico h/n/c Popular Mortgage; Harold Hommy Rosario Medina, Vice Pres. Construcción; Luis R. Morales Solano, Arrow Developers Corp.; Luis R. Rivera Medina, LRRM Real Estate; María del C. de Quesada, María Miyares Realty; Mc P&G, Inc., h/n/c Terranova Realty Group, Pres. Joseph McCloskey; Molinas Doors & Windows Corp.; Yasmín Agosto, Ejecutiva Cuentas BPPR<br><br>Recurridos | CC-2025-140 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 10 de junio de 2026.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca la *Sentencia* emitida el 9 de enero de 2025 por el Tribunal de Apelaciones. En consecuencia, se devuelve el caso a ese foro para que atienda en sus méritos el recurso de revisión judicial presentado por la peticionaria, en conformidad con lo resuelto en la Opinión.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo